**In re Charles Schreiner
NELSON, Debtor.**

**In re POST PADDOCK, LTD., A Texas Limited Partnership, Debtor [Employer I.D. # 75–1959040].**

**Bankruptcy No. 87–50776–A.**

United States Bankruptcy Court,
W.D. Texas,
San Antonio Division.

Jan. 25, 1988.

Oppenheimer, Rosenberg, Kelleher & Wheatley, Raymond W. Battaglia, San Antonio, Tex., for debtors.

Evelyn Biery and Noe Reyna of Fulbright & Jaworski, San Antonio, Tex., for Crow–Birnbaum # 2.

Charles Jefferson of Smith, Barshop, Stoffer & Millsap, Inc., San Antonio, Tex., for George Shaw, et al.

## SUPPLEMENTAL FINDINGS OF FACT AND CONCLUSIONS OF LAW ON ORDER CONFIRMING PLAN

R. GLEN AYERS, Jr., Chief Judge.

BE IT REMEMBERED that on the 29th day of September, 1987, came on for consideration the First Amended Joint Chapter 11 Plan of Reorganization (the "Plan") and the Court after considering the pleadings, including objections to confirmation filed by various creditors, proposed modifications to the Plan, testimony, and arguments of counsel for all parties in interest appearing and requesting the right to be heard, entered its "Order Confirming Plan (Official Form 31, as Modified)" on the 30th day of September, 1987 (the "Order of Confirmation"). Although no party has requested that this Court prepare Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Bankruptcy Rules of Procedure, the Court expressly reserved the right to make such Supplemental Findings of Fact and Conclusions of Law as it deemed appropriate. Accordingly, the Court makes the following mixed Findings of Fact and Conclusions of Law which supplement and are intended to be consistent with those findings and conclusions contained in the Order of Confirmation:

## I.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

1. On March 2, 1987, POST PADDOCK, LTD. filed its voluntary petition pursuant to Chapter 11 of Title 11, United States Code.

2. On April 1, 1987, CHARLES SCHREINER NELSON filed his voluntary petition pursuant to Chapter 11 of Title 11, United States Code.

3. On April 3, 1987 the Debtors filed their Consolidated Joint Plan of Reorganization. Subsequently a Disclosure Statement with respect to said Consolidated Joint Plan of Reorganization was filed with the Court, amended and submitted for approval by this Court in accordance with the provisions of Section 1125 of the Bankruptcy Code.

4. On the 21st day of August, 1987, this Court entered its Orders requiring certain modifications to the Disclosure Statement and approving same as modified for circulation to creditors in the case together with the First Amended Consolidated Plan of Reorganization (the "Plan").

5. The Plan complies with all of the applicable provisions of Title 11.

6. The proponent of the Plan has complied with the applicable provisions of Title 11.

7. The Plan has been proposed in good faith and not by any means forbidden by law. This Court rejects assertions by various creditors that the status of the § 1102 Official Committee of Unsecured Creditors (the "Committee") is probative of any bad faith on the part of the Debtor. The function of the Committee under the Plan is important because the Committee is in part responsible for the selection of members to the Management Committee for the Nelson Creditor's Trusts (the "Trust"). The Trust is the operating vehicle into which all of the property of this bankruptcy estate is to be deposited.

8. The actions of unsecured creditors of this estate in connection with the formation of the Committee, subsequent resignations

therefrom, unwillingness to serve, and reformation of the Committee, are not attributable to the Debtor. Moreover, the Court finds that this Debtor advised his creditors of the status of the Committee and its problems at page 110 of the Approved Disclosure Statement. It should Statement. It should be noted, however, that many of the problems relating to the committee composition occurred after the date of the Disclosure Statement hearing. Finally, this Court will retain jurisdiction over the composition of the Committee to insure that that body is truly representative of the Creditor body as a whole.

9. In confirming the Plan, the Court has not considered the recommendations of the Committee. The Court finds that no functioning Committee existed in this case since the resignation of Frost National Bank and North Frost Bank in July, 1987. Of the three purported members of the Committee in September, 1987 (RepublicBank San Antonio, Lockwood National Bank and Lewis Braselton), one (RepublicBank) had never participated on the Creditors' Committee and had apparently attempted to resign. Another (Mr. Braselton) had never been appointed to the Creditors' Committee. The Creditors' Committee made no attempt to ascertain the value of the properties inside the bankruptcy estate or of NELSON'S excess exempt property. It performed no analysis to determine whether the Plan was superior to a Chapter 7 liquidation because all non-exempt assets were to be transferred to the Trust.

10. The Court required the Debtor to clarify the Plan to insure that any payments made or to be made by Debtor for services or for costs and expenses in or in connection with the case, or in connection with the Plan and incident to the case, have been approved by, or are subject to the approval of the Bankruptcy Court as reasonable.

11. The Debtor has complied in all respects with the requirements of 11 U.S.C. § 1129(a)(5)(A, B).

12. The Court further finds that no governmental entity has particular interest in this case and therefore the requirements of 11 U.S.C. § 1129(a)(6) have been met.

■ 13. Each holder of a claim or interest with respect to each impaired class of claims or interests has accepted the Plan or will receive or retain under the Plan on account of such claim or interest property of a value, as of the Effective Date of the Plan, that is not less than the amount that such holder would receive or retain if the Debtor were liquidated under Chapter 7 of Title 11 on such date. More specifically, the Court finds that if the property of this estate were liquidated at the present time by a Chapter 7 Trustee, in the reasonable period of time contemplated in a Chapter 7 proceeding, there would be little or no opportunity to secure asset values where there is any equity in any asset. The Debtor presented prima facia evidence which was unrebutted that through this Plan, some creditors will receive value which they otherwise would not receive in a Chapter 7. No creditor will receive under the Plan less than the amount it would receive under Chapter 7. The Plan expressly provides for a contribution of additional money by CHARLES SCHREINER NELSON from his excluded assets to fund this Plan. Plan provisions which provide for the preservation of the estate's interest in various partnerships in exchange for what amounts to a "carried interest" present a mechanism which will insure preservation of some partnership interests which would surely be lost in a Chapter 7 case and there is some likelihood that these interests will have some value. Finally, the tax advantages of the Plan, including the settlement regarding the Blake Street Terrace Property with Gill Savings, allow substantially more favorable tax treatment than would be available under Chapter 7.

14. With respect to each class of claims or interests, such class has accepted the Plan or such class is not impaired under the Plan; or alternatively, the Plan has been "crammed-down" upon such class of creditors in accordance with the provisions of Section 1129(b) of Title 11 after appropriate request by the Debtor and consent by the Court to proceed under the provisions of

that subsection. Under the terms of the Plan, the Debtor is not entitled to receive any value from the estate until after all senior classes of creditors are paid in full in accordance with the provisions of the Bankruptcy Code.

15. The Plan complies with the requirements imposed by Section 1129(a)(9) in all respects.

16. At least one class of claims that is impaired under the Plan has accepted the Plan, determined without including any acceptance of the Plan by an insider. Included among the impaired classes of creditors voting to accept the Plan are creditors in Classes 10A, 10C, 10F, 10H and 10Z.

17. The Plan is feasible in that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor under the Plan. The concept of feasibility requires essentially that there be sufficient cash flow in the bankruptcy estate to fund the Plan and operate in the fashion suggested in the Plan. *In Re Neff,* 60 B.R. 448 (Bankr.N.D.Tx.1985) aff'd mem., 785 F.2d 1033 (5th Cir.1986). The concept of feasibility does not require a guarantee that there will be a return to all unsecured creditors. Rather, it requires that there be sufficient money to fund the Plan. The assets which are to be contributed to the Nelson Creditor Trust include a significant amount of liquid assets, including cash. Moreover, the contribution by CHARLES SCHREINER NELSON of a fifteen (15%) percent income interest from certain excluded assets serves to provide this bankruptcy estate with additional liquidity. One third of this contributed income interest is dedicated to the Trust for the repurchase of certain illiquid assets to be purchased from the Trust by NELSON as Revested Debtor. The balance of the income interest is to be paid directly to Class 14A Approved Creditors on a pro rata basis. Although the Plan is designed to be an operating Plan, it is a flexible document which might permit an orderly liquidation of assets should the Management Committee of the Nelson Creditor Trust determine such action to be prudent. The liquid assets in this estate are clearly sufficient to fund the operation of this estate for a substantial period after the time which might be required by the management committee of the Nelson Creditor Trust to arrive at some appropriate management strategy.

18. One creditor, George Shaw, et al. ("SHAW") urges that Debtor has failed to meet its burden of feasibility because the Debtor has failed to prove the value of the assets being contributed to the Nelson Creditor's Trust. The Court finds this argument unconvincing. First, SHAW raised the lack of appraised values as an objection to the Disclosure Statement. At that hearing, this Court found that the Debtor's disclosures as to the values of assets of the estate were adequate. Subsequently, SHAW raised objections along these same lines at the hearing on confirmation. Since the Debtor is contributing all non-exempt assets of the bankruptcy estate to the Trust, their values are inapposite with respect to the "best interests" and "feasibility" tests imposed by § 1129 of the Code because whatever values are available in the estate of this Debtor will be administered under the Plan.

19. All fees payable under Section 1930, as determined by the Court at the hearing on Confirmation of the Plan have been paid.

20. With respect to each class of claims or interests that is impaired under, and has not accepted (or consented in open court), the Plan, the Court finds that the Plan does not discriminate unfairly and is fair and equitable in all respects, notwithstanding the objections of SHAW.

21. This Court further finds that Debtor's Plan provides for the continuation of the business operations by the Debtor.

## II.

### CONCLUSION

22. Based upon the foregoing Supplemental Findings of Fact and Conclusions of Law and those Findings of Fact and Conclusions of Law and those Findings of Fact

and Conclusions of Law set forth in the Order Confirming Plan entered on the 30th day of September, 1987, this Court finds that Debtor's Plan as modified complies with all the requirements of Section 1129, Title 11 U.S.C. and should be confirmed.