In re BRISCOE ENTERPRISES
LTD., II, Debtor.

HEARTLAND FEDERAL SAVINGS
AND LOAN ASSOCIATION,
Appellant,

v.

BRISCOE ENTERPRISES
LTD., II, Appellee.

Civ. A. Nos. 4–91–457–A to 4–91–461–A.

United States District Court,
N.D. Texas,
Fort Worth Division.

April 14, 1992.

Marilyn Delores Garner, Patrick J. Neligan, Jr., Margaret A. Mahoney, Weil Gotshal & Manges, Dallas, Tex., for debtor, appellee.

Douglas Steward Lang, Holland Ann Neff, Belinda Lynn Reagan, Rosa Maria Orenstein, Gardere & Wynne, Dallas, Tex., for appellant.

## MEMORANDUM OPINION AND ORDER

McBRYDE, District Judge.

This consolidated action encompasses appeals from five separate orders rendered by the United States Bankruptcy Court, Northern District of Texas, Fort Worth Division, the Honorable Massie Tillman presiding. The court, having reviewed the briefs of appellant, Heartland Federal Savings and Loan Association ("Heartland"), and appellee, Briscoe Enterprises Ltd., II ("debtor"), the record on appeal and applicable authorities, makes the following determinations:

### I.

#### *Jurisdiction*

The appeals are from orders entered by the bankruptcy court on April 24, 1991 (one order), January 25, 1991 (three orders), and January 24, 1991 (one order). This court's jurisdiction exists pursuant to 28 U.S.C. § 158(a).

### II.

#### *Undisputed Facts*

Debtor, a Texas limited partnership, owns a 784-unit apartment complex known as the Regalridge Square Apartments ("Regalridge") in Fort Worth, Texas. Regalridge houses low to moderate income families, many of whom receive rent subsidies. Regalridge was constructed in two phases with financing provided by Heartland's predecessor. In connection with the development of each phase, debtor executed a non-recourse note in the original amount of $9.5 million dollars and a deed of trust granting a lien in that portion of the property then being developed. Heartland is the owner and holder of the notes and deeds of trust, dated April 11, 1983, and January 31, 1984, respectively. Additional financing of $3.5 million dollars for each phase was provided by the City of Fort Worth ("City"), which retained inferior liens in the property.

Debtor defaulted on its notes by failing to make interest payments in October, No-vember, and December 1988. It entirely ceased servicing its debt to Heartland in July 1989.

### III.

#### *Proceedings*

A voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code was filed by debtor on December 29, 1989; and, it filed its plan of reorganization on June 11, 1990. On August 17, 1990, debtor filed an unsigned copy of its proposed disclosure statement. It filed its first amended plan of reorganization on November 16, 1990. The plan was later modified by the filing of debtor's second amended plan of reorganization on December 12, 1990, third amended plan of reorganization on December 20, 1990, and fourth amended plan of reorganization on January 22, 1991. Debtor filed its first amended disclosure statement on November 16, 1990, second amended disclosure statement on December 12, 1990, and third amended disclosure statement on December 20, 1990. The bankruptcy court approved the third amended disclosure statement following a hearing on December 21, 1990.

Beginning January 23, 1991, and continuing on four additional days, the bankruptcy court conducted a hearing to determine whether debtor's fourth amended plan should be confirmed. Before taking up the matter of plan confirmation, the bankruptcy court heard and considered various pending motions. First, the court considered and granted debtor's applications to approve the employment of an appraiser and an architect, *nunc pro tunc.* The court then considered and denied Heartland's motions for administrative claim and for deposit of consideration. During the confirmation hearing, the bankruptcy court heard the testimony of Anne Sadovsky, debtor's marketing agent, and approved debtor's application to employ her, *nunc pro tunc.* At the conclusion of the confirmation hearing on March 14, 1991, the bankruptcy court stated that the prospect of debtor's meeting the debt service requirement of the plan was "marginal." Nevertheless, on April 23, 1991, the bank-

ruptcy court signed its findings of fact and conclusions of law and rendered its order confirming debtor's fourth amended plan of reorganization.[1]

Heartland filed separate appeals from the bankruptcy court's orders (1) confirming debtor's fourth amended plan of reorganization, (2) employing and retaining James W. Daniels & Associates, Inc., as appraiser, (3) denying motion to allow administrative claim, (4) employing and retaining John R. Horton, Inc., as architectural design and supervision company, and (5) denying Heartland's motion for deposit of consideration.

Apparently the bankruptcy court did not sign a separate order approving the application to employ marketing agent, *nunc pro tunc*, as it had on the applications to approve employment of an appraiser and an architect. The docket sheet reflects, and the record on appeal contains, only a proceeding memorandum noting that the application was granted. Presumably, for that reason Heartland did not file a separate appeal as it did with regard to the other applications and motions heard at the confirmation hearing. In any event, Heartland did include the approval of the marketing agent's employment as an issue on appeal of the plan confirmation and debtor has not complained of the procedure followed.

### IV.

#### The Plan

Debtor's plan is typical of Chapter 11 reorganization plans in that it begins with a list of definitions of terms used in the plan (Article I), certain general terms and conditions (Article II), and the classification of claims and interests (Article III). Article IV describes the treatment of the six classes of claims, to wit:

Class 1 allowed administrative claims;
Class 2 allowed priority claims;
Class 3 allowed City claim;
Class 4 allowed Heartland claim;
Class 5 allowed unsecured claims; and

Class 6 holders of interests in the debtor. In particular, it provides that City's claim is to receive the same treatment as the Class 5 unsecured claims. Holders of Class 5 claims are to receive a pro rata share of the beneficial interests in the Regalridge trust, hereinafter described, evidenced by certificates of beneficial interest. The Regalridge trustees are to make periodic cash payments on at least an annual basis when they, in their discretion, determine that the trust has available net cash flow that is not required to be reserved for another purpose.

As for Heartland's claim, the plan provides that the secured portion thereof shall be paid in monthly installments of principal and interest as though amortized over thirty years from the effective date of the plan, with interest at the rate provided in the January 31, 1984, promissory note executed by debtor. The secured claim is to be paid in full upon the sale of the property or the expiration of fifteen years, whichever shall first occur. If Heartland fails to make a timely § 1111(b) election, the unsecured portion of its claim is to receive the same treatment as Class 5 unsecured claims. Article IV further provides that Heartland will retain its lien in the property and that

> all other terms and conditions of the treatment of [Heartland's claim] described in the plan and the lien securing same shall be similar to the original terms of Heartland's note and lien, except where inconsistent with the letter and spirit of this plan.

Fourth Amended Plan of Reorganization at 12, ¶ 4.4.c. The plan does not contain as an exhibit or otherwise the note and deed of trust, or any of the terms thereof, to be executed in favor of Heartland.

Articles V and VI describe plan implementation and formation of the Regalridge trust, to which ownership of the property is to be transferred. The trust is to be governed by three trustees to be selected, one each, by the Fort Worth NAACP, City, and Heartland. The Fort Worth NAACP is not

---

1. A copy of the bankruptcy court's findings of fact and conclusions of law taken from the record on appeal is attached as an appendix to this memorandum opinion and order.

a creditor of debtor. The plan provides that the trustees will have exclusive power and control over the operation of Regalridge and that they will not be subject to any court supervision.

Articles VII through XIV contain the remaining plan provisions. None of these is particularly pertinent to the issues raised on appeal, except that paragraph 8.2 of Article VIII does provide that the plan may be modified following confirmation after notice and hearing.

## V.

### *Issues on Appeal*

Heartland asserts fifty-one issues on appeal, many of which appear to present different shades of the same matter. Heartland's issues are:

1. Whether the Bankruptcy Court erred in confirming the Debtor's Fourth Amended Plan of Reorganization.

2. Whether the Bankruptcy Court erred in finding that the Debtor's Plan complied with each and every one of the requirements for confirmation under § 1129(a)(1)–(11) and § 1123 of the Bankruptcy Code.

3. Whether the Bankruptcy Court erred in finding and concluding that the Debtor had met its burden of proof on the requirements of § 1129(a) and § 1123 by the preponderance of the evidence.

4. Whether the Bankruptcy Court erred in finding that the Debtor's Plan met each of the requirements for confirmation under § 1129(b).

5. Whether the Bankruptcy Court erred in finding that the Debtor had met its burden of proof on the requirements of § 1129(b) by clear and convincing evidence.

6. Whether the Bankruptcy Court erred in approving the applications to employ professionals *nunc pro tunc*.

7. Whether the Bankruptcy Court erred in approving the payments made to professionals.

8. Whether the Bankruptcy Court was clearly erroneous in its findings.

9. Whether the Bankruptcy Court erred in entering the following orders on January 25, 1991: (a) Order Employing and Retaining John R. Horton, Inc. as Architectural Design and Supervision Company; (b) Order Employing and Retaining James W. Daniels and Associates as Appraiser for the Debtor; and (c) Order Denying Heartland's Motion for Deposit of Consideration to be Distributed Under Plan.

10. Whether the Bankruptcy Court erred in entering an Order Denying Heartland's Motion to Allow Administrative Claim on January 24, 1991.

11. Whether the Bankruptcy Court erred in entering the Order Confirming the Debtor's Fourth Amended Plan of Reorganization ("Plan") on April 24, 1991.

12. Whether the Bankruptcy Court erred in approving the Debtor's Third Amended Disclosure Statement on December 21, 1990, and in finding that the Debtor's Third Amended Disclosure Statement contained adequate information as required by 11 U.S.C. § 1125.

13. Whether the Bankruptcy Court erred in finding that the Debtor's modifications to the Plan, which were included in the Plan after voting thereon, did not adversely change the treatment of the claim of any creditor.

14. Whether the Bankruptcy Court erred in finding that (a) a reasonable basis exists for separate classifications of the claims and interests in each class, (b) that the claims and interests of each class under the Plan are substantially similar under the Plan and (c) such classification satisfies the requirements of § 1122(a) of the Bankruptcy Code.

15. Whether the Bankruptcy Court erred in finding that the interest holders and the Debtor do not receive or retain any property under or pursuant to the Plan.

16. Whether the Bankruptcy Court erred in finding that Heartland was required to make an election under § 1111(b) in order to have its secured claim classified separately from its unsecured claim.

17. Whether the Bankruptcy Court erred in finding that two unsecured classes

of non-insider creditors voted to accept the Plan.

18. Whether the Bankruptcy Court erred in finding that "... the control of two classes by Heartland effectuates a non-substantive and technical amendment to the Plan." Record No. 152, Findings p. 4, ¶ 15.

19. Whether the Bankruptcy Court erred in overruling Heartland's objections to confirmation of the Plan based on technical issues relating to classification.

20. Whether the Bankruptcy Court erred in finding that the provisions of the Plan regarding the procedure for selection, appointment, removal, qualifications and duties of the "Regalridge Trustees" and who was to select these trustees are consistent with the interests of creditors and with public policy.

21. Whether the Bankruptcy Court erred in finding that the Plan provides for distribution to creditors on a pro-rata basis of the cash flow on at least an annual basis.

22. Whether the Bankruptcy Court erred in finding that (1) Heartland will retain its liens under the Plan, (2) the property will probably support debt service equal to Heartland's secured claim, and (3) Heartland will receive the present value of its secured claim.

23. Whether the Bankruptcy Court erred in finding that, "... over the next six years, money will be available as cash flow for distribution to creditors whose claims will be treated as unsecured Class 5 claims after payment of ordinary and necessary operating expenses and payment of debt service on Heartland's secured claim." Record No. 152, Findings p. 7, ¶ 27.

24. Whether the Bankruptcy Court erred in finding that Heartland's unsecured deficiency claim is in the approximate amount of $10,000,000.00.

25. Whether the Bankruptcy Court erred in finding that the Class 5 creditors accepted the Plan and that no Class 5 creditors voted against the Plan.

26. Whether the Bankruptcy Court erred in finding that the Plan is feasible.

27. Whether the Bankruptcy Court erred in finding that the Plan has even a marginal prospect of success. Record No. 152, Findings p. 7, ¶ 31.

28. Whether the Bankruptcy Court erred by failing to apply the correct legal standard in confirming the Plan.

29. Whether the Bankruptcy Court erred in accepting the Debtor's projections while cautioning that the Debtor "... will have to work diligently to make the Plan succeed." Record No. 152, Findings, p. 7, ¶ 36.

30. Whether the Bankruptcy Court erred in finding that only $250,000.00 to $300,000.00 is needed to make repairs on the property.

31. Whether the Bankruptcy Court erred in finding that the value of the property and Heartland's secured claim is $8,200,000.00.

32. Whether the Bankruptcy Court erred by applying an improper legal standard to determine the value of Heartland's collateral and secured claim.

33. Whether the Bankruptcy Court erred in finding that the property will generate sufficient cash flow to pay necessary and normal operating expenses, the secured debt of Heartland at a market rate of interest, and a dividend to Class 5 creditors.

34. Whether the Bankruptcy Court erred in finding that for the past several months the Debtor has met or exceeded $200,000.00 per month in income and that an income of $200,000.00 per month will be sufficient to fund the Plan.

35. Whether the Bankruptcy Court erred in finding that occupancy at the property has increased from 55% to 85% and will probably increase to 90% in the first half of 1991.

36. Whether the Bankruptcy Court erred in finding that (a) the Debtor has demonstrated an ability to make needed repairs on the property, (b) some needed repairs to the property could be delayed until the end of the year and, (c) cash flow

will be available by the end of the year to pay for deferred repairs.

37. Whether the Bankruptcy Court erred in finding that the Plan is not likely to be followed by the need for further financial reorganization or liquidation.

38. Whether the Bankruptcy Court erred in finding that, notwithstanding Heartland's rejection of the Plan, the Plan may be confirmed pursuant to § 1129(b), that the Plan does not discriminate unfairly against and is fair and equitable to Heartland.

39. Whether the Bankruptcy Court erred in finding that the treatment of Heartland's deficiency claim in Class 5 is identical to the treatment of all Class 5 claims.

40. Whether the Bankruptcy Court erred in finding that the Plan protects the legal rights of Heartland's unsecured deficiency claim.

41. Whether the Bankruptcy Court erred in finding that "... no holder of any claim or interest junior to Heartland's claims under the Plan will receive or retain on account of the junior claim or interest any property under the Plan". Record No. 152, Findings p. 10, ¶ 43.

42. Whether the Bankruptcy Court erred in denying Heartland's Motion to Dismiss or Convert the bankruptcy case.

43. Whether the Bankruptcy Court erred in its failure to make any finding regarding the apparent grant of a discharge of the interest holders of the Debtor.

44. Whether the Bankruptcy Court erred in its failure to make any finding regarding the establishment and use of the Distribution Fund.

45. Whether the Bankruptcy Court erred in its failure to make a finding that the projections used by the Debtor at the Confirmation hearing were not the same projections mailed out to the creditors for voting on the Plan.

46. Whether the Bankruptcy Court erred in its failure to make a finding that the change in projections was a material change to the Plan.

47. Whether the Bankruptcy Court erred in its failure to make any findings regarding the fairness, specificity or legality of any of the provisions of the Regalridge Trust Agreement and Plan.

48. Whether the Bankruptcy Court erred in relying upon the Court's personal observations of the property in confirming the Plan.

49. Whether the Bankruptcy Court erred in denying Heartland's Motion to Strike Affidavit of Tallying Agent.

50. Whether the Bankruptcy Court erred in finding that the balloting of classification of creditors was proper and that any error in the balloting of classification of any creditors was harmless.

51. Whether the Bankruptcy Court erred in entering an Order Approving and Granting Amendment to the Confirmed Fourth Amended Plan of Reorganization.

Having thus listed the issues, Heartland proceeds to divide its brief into categories as follows:

I. The debtor's plan is not feasible, § 1129(a)(11).

II. The plan fails to meet the mandatory requirements for confirmation under the Bankruptcy Code.

III. The plan fails to meet the requirements for cramdown under the Bankruptcy Code, § 1129(b).

IV. The plan violates the absolute priority rule.

V. The plan fails to comply with the mandatory provisions of § 1123.

VI. The plan expends Heartland's cash collateral for unallowable purposes, § 506(c).

VII. Improper approval of professionals and their fees, *nunc pro tunc.*

VIII. Heartland's administrative claim and motion for deposit of consideration.

Heartland does not state which particular issues belong to each of these categories.

The court's discussion of the issues will focus on the eight categories defined by Heartland, but will be organized in what seems to the court to be a more logical

order. The court considers that any of the issues on appeal not specifically discussed and supported by Heartland in the body of its briefs is waived. *McGruder v. Necaise,* 733 F.2d 1146, 1148 (5th Cir.1984); *Ronit, Inc. v. Block Shim Development Co.— Irving (In re Block Shim Development Co.—Irving),* 118 B.R. 450, 452 n. 2 (N.D.Tex.1990), *aff'd,* 939 F.2d 289 (5th Cir. 1991).

## VI.

### *Standard of Review*

■■■ To the extent the appeal presents questions of law, the bankruptcy court's judgment is subject to *de novo* review. *Pierson & Gaylen v. Creel & Atwood (In re Consolidated Bancshares, Inc.),* 785 F.2d 1249, 1252 (5th Cir.1986). Findings of fact, however, will not be set aside unless clearly erroneous. *Memphis–Shelby County Airport Authority v. Braniff Airways, Inc. (In re Braniff Airways, Inc.),* 783 F.2d 1283, 1287 (5th Cir.1986). A finding is clearly erroneous, although there is evidence to support it, when the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Id.* The mere fact that this court would have weighed the evidence differently if sitting as the trier of fact is not sufficient to set aside the bankruptcy court's order if that court's account of the evidence is plausible in light of the record viewed in its entirety. *Anderson v. City of Bessemer City,* 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518 (1985).

■■■ Although the parties doubtless would agree with the foregoing recitation of the standard of review on appeal, they disagree as to the burden of proof on debtor at the confirmation hearing. Heartland maintains that debtor had to prove the confirmability of its plan by clear and con-

vincing evidence.[2] Debtor, on the other hand, states that the preponderance of the evidence[3] standard applies in all bankruptcy matters, relying on *Grogan v. Garner,* —— U.S. ——, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

In *Grogan,* the United States Supreme Court determined that the preponderance of the evidence standard is the appropriate standard of proof for the dischargeability exceptions in 11 U.S.C. § 523(a). 111 S.Ct. at 661. Following *Grogan,* the Tenth Circuit determined that the preponderance of the evidence standard also applies to dischargeability under 11 U.S.C. § 727. *First National Bank of Gordon v. Serafini (In re Serafini),* 938 F.2d 1156, 1157 (10th Cir.1991). Both of these cases recognize that a debtor has no constitutional or fundamental right to a discharge that would entitle him to a heightened standard of proof. *Grogan,* 111 S.Ct. at 659; *Serafini,* 938 F.2d at 1157 n. 2. The holdings in both cases are limited to the issue of dischargeability.

The court is not convinced that *Grogan* was intended to accomplish a wholesale destruction of the precedents set with regard to the debtor's burden of proof in other bankruptcy contexts. *Grogan* speaks only to the creditor's, not the debtor's, burden of proof with regard to dischargeability. The debtor's burden has traditionally been one of clear and convincing evidence, at least in the context of a cramdown. See *In re Murel Holding Corp.,* 75 F.2d 941, 942 (2nd Cir.1935); *B.W. Alpha, Inc. v. First City Nat'l Bank of San Angelo, N.A. (In re B.W. Alpha, Inc.),* 100 B.R. 831, 833 (N.D.Tex.1988); *In re Future Energy Corp.,* 83 B.R. 470, 481 (Bankr.S.D.Ohio 1988). Some courts have indicated that the same standard applies under 11 U.S.C. § 1129(a). *In re Rusty Jones, Inc.,* 110 B.R. 362, 373 (Bankr.

---

**2.** Evidence is clear and convincing if it places in the factfinder an abiding conviction that the truth of the factual contentions is highly probable. *Colorado v. New Mexico,* 467 U.S. 310, 316, 104 S.Ct. 2433, 2437, 81 L.Ed.2d 247 (1984); *Kaszuk v. Bakery & Confectionary Union,* 638 F.Supp. 365, 374 (N.D.Ill.1985), *aff'd,* 791 F.2d 548 (7th Cir.1986).

**3.** A preponderance of the evidence means proof sufficient to persuade the finder of fact that the proposition is more likely true than not true. *Hopkins v. Price Waterhouse,* 737 F.Supp. 1202, 1206 (D.D.C.), *aff'd,* 920 F.2d 967 (D.C.Cir.1990).

N.D.Ill.1990); *In re Agawam Creative Marketing Assocs., Inc.*, 63 B.R. 612, 619 (Bankr.D.Mass.1986). The clear and convincing test is the logical one to apply because of the stricter scrutiny required when property and property rights are sought to be taken. *Cf. Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935) (recognizing the substantive rights of a secured creditor in specific property and noting that the bankruptcy power is subject to the Fifth Amendment). There is no question that debtor has failed to meet this burden of proof. Moreover, even if the court's analysis is incorrect and the appropriate burden of proof is one of preponderance of the evidence, the result would be the same.

## VII.

### Confirmability of Debtor's Plan

#### A. Feasibility

■■■ To be confirmed, a debtor's plan of reorganization must be feasible. 11 U.S.C. § 1129(a)(11); *In re N.S. Garrott & Sons*, 48 B.R. 13, 15 (Bankr.E.D.Ark.1984). The burden of proving feasibility belongs to the debtor. *In re Lakeside Global II, Ltd.*, 116 B.R. 499, 505 (Bankr.S.D.Tex. 1989). To demonstrate feasibility, the debtor must show by concrete evidence that there will be sufficient cash flow to fund the plan and maintain operations according to the plan. *In re Nelson*, 84 B.R. 90, 93 (Bankr.W.D.Tex.1988); *In re Merrimack Valley Oil Co.*, 32 B.R. 485, 488 (Bankr. D.Mass.1983). Factors to be considered include the debtor's prior performance, the adequacy of capital structure, the earning power of the business, economic conditions, the ability of management, the probability of the continuance of the same management, and any other related matter that determines the prospects of a sufficiently successful operation to enable performance of the provisions of the plan. *Canal Place Limited Partnership v. Aetna Life Ins. Co. (In re Canal Place Limited Partnership)*, 921 F.2d 569, 579 (5th Cir.1991) (*per curiam* approving bankruptcy court's analysis set forth as appendix to the opin-

ion); *Lakeside Global*, 116 B.R. at 506. Plans that are mere visionary schemes based on speculation, conjecture, or unrealistic projections cannot be confirmed. *In re Sound Radio, Inc.*, 93 B.R. 849, 856 (Bankr.D.N.J.1988), *aff'd in part, remanded in part*, 103 B.R. 521 (D.N.J.1989), *aff'd*, 908 F.2d 964 (3rd Cir.1990).

■■■ Here, Heartland maintains that debtor's plan is but a visionary scheme because debtor has not been able to meet its own operating projections in the past and its expectations for future performance are unsupported. For example, in April 1990, debtor submitted a budget in connection with its opposition to Heartland's motion to lift the automatic stay, which projected expenditures of $1,115,-000.00 for 1990. Debtor's actual expenditures for 1990 were $1,807,000.00—thirty-eight percent more than anticipated. As for the future, debtor projects, and its plan's success depends upon achievement of, a ninety percent economic occupancy rate for 1991. Debtor has never before been able to achieve more than an eighty-five percent physical occupancy rate, at which time the economic occupancy rate was only sixty-eight and 08/100 percent. Even debtor's own expert projected a seventy percent economic occupancy rate for 1991.

More important than past inability to meet expectations is the lack of evidence to support present ability to make a plan work. Debtor's plan provides that Heartland is to receive, over a period of fifteen years, installments of interest plus only twenty percent of the principal of its secured debt. At the end of fifteen years, debtor will make a balloon payment to Heartland of approximately $6,500,000. It appears that virtually all of the income generated from Regalridge will be required to fund the plan and to keep Regalridge operating. Debtor has not made any showing of how it will be able to make the balloon payment to Heartland at the end of fifteen years. Because the plan calls for debtor to be operating on a shoestring and there has been no showing of the source of funds for the balloon payment, it is diffi-

cult to see how the plan could be feasible under the Code. *Lakeside Global,* 116 B.R. at 507.

In response, debtor points to other evidence reflecting improved conditions at Regalridge and urges the court that two different interpretations can be made from the same set of facts. That being the case, debtor urges that the court must defer to the bankruptcy court's findings. *Amadeo v. Zant,* 486 U.S. 214, 223, 108 S.Ct. 1771, 1777, 100 L.Ed.2d 249 (1988). In order for deference to be mandated, however, the bankruptcy court's findings must be plausible in light of the record viewed in its entirety. *Anderson,* 470 U.S. at 574, 105 S.Ct. at 1511. Here, the record as a whole reflects the uncertainty inherent in debtor's plan. Debtor offered no evidence on the future value of the property or on the source of funds for the balloon payment. Debtor recognizes that ninety percent economic occupancy is necessary in order for the plan to be funded, yet admits that ninety percent economic occupancy has never before been achieved.[4]

In sum, "feasibility" means that confirmation of a plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan. 11 U.S.C. § 1129(a)(11). A plan that has a "marginal prospect of success"[5] because the debtor's "prospects of meeting the debt service required"[6] under the plan of reorganization are marginal is not, as a matter of law, a feasible plan. Therefore, the bankruptcy court's findings and conclusions set forth in item Nos. 31, 36, 37 and 38 of the April 24, 1991, findings of fact

and conclusions of law [hereinafter "Findings"] must be set aside.[7]

### B. Other Requirements of 11 U.S.C. § 1129(a)

In addition to being feasible, a plan must meet a number of other requirements, including those set forth at 11 U.S.C. §§ 1129(a)(1)–(4), (7) and (8). These requirements are briefly that: the plan comply with applicable provisions of the Bankruptcy Code [§ 1129(a)(1)]; debtor comply with applicable provisions of the Bankruptcy Code [§ 1129(a)(2)]; the plan be proposed in good faith [§ 1129(a)(3)]; payments made or to be made be approved by the bankruptcy court [§ 1129(a)(4)]; the plan meet the best interest test [§ 1129(a)(7)]; and, each impaired class must accept the plan [§ 1129(a)(8)]. Heartland claims that these requirements have not been met. A brief discussion follows with regard to each of them, except § 1129(a)(8). There is no question that each impaired class has not accepted the plan and that the plan is subject to the cramdown provisions of § 1129(b). *See* Findings No. 28.

#### 1. Compliance with Applicable Code Provisions

Heartland argues that the plan fails to comply with § 1129(a)(1), because the plan is not feasible[8] and because the requirements of §§ 1123, 506(c), and 1125 have been violated. Heartland further asserts that the plan improperly classifies claims in an attempt to divest Heartland of the right to cast a vote based on its unsecured

---

4. Debtor further argues that the plan is somehow made more feasible by the voiding of appellant's lien in debtor's personalty. *See* March 25, 1991, order signed by Judge Mahon in CA4–90–818–E. The lien avoidance occurred subsequent to the confirmation hearings and is not an issue on appeal. The record reflects that personalty was not included in the valuations of the property before the bankruptcy court. This point is now moot in any event, however, as the Fifth Circuit has reversed the district court's order and affirmed the decision of the bankruptcy judge denying avoidance of appellant's lien. *See Heartland Federal Savings & Loan*

*Ass'n v. Briscoe Enterprises, Ltd., II,* 956 F.2d 265 (5th Cir.1992).

5. Findings of Fact and Conclusions of Law No. 31.

6. Tr.Vol. V at 72.

7. The bankruptcy court's determination, set forth in item 35, that the value of Heartland's secured claim is $8.2 million dollars is discussed *infra.*

8. *See* discussion of feasibility at pp. 804–06, supra.

claim.[9] Heartland also maintains that debtor itself has failed to comply with applicable provisions of the Bankruptcy Code, in violation of 11 U.S.C. § 1129(a)(2).

Section 1123 sets forth the requirements for items to be included in reorganization plans. Pursuant to § 1123(a)(2), a plan must specify any class of claims or interests that is not impaired under the plan. *In re Polytherm Indus., Inc.*, 33 B.R. 823, 829 (W.D.Wis.1983). Although the better practice is to include a statement of whether each class of claims is impaired or unimpaired, all that is required is that there be a basis upon which a creditor can determine whether a class of claims is impaired. *In re AG Consultants Grain Div., Inc.*, 77 B.R. 665, 670 (Bankr.N.D.Ind. 1987). In this case, one can easily determine from the plan which claims are unimpaired.

Section 1123(a)(3) requires that a plan specify the treatment of any class of claims that is impaired under the plan. This section means that if a plan provides for future cash payments, it must set forth the dollar amount of each payment and the date upon which it will be made. *Sandy Ridge Dev. Corp. v. Louisiana Nat'l Bank (In re Sandy Ridge Dev. Corp.)*, 881 F.2d 1346, 1353 (5th Cir.1989). The plan in this case does not contain the requisite specificity as to payments to be made.[10] Nor does the plan specify the terms of the note and deed of trust to be retained by Heartland.[11]

Section 1123(a)(4) requires that the plan provide the same treatment to each claim or interest of a particular class unless the holder of a particular claim agrees to less favorable treatment. Heartland complains that until January 22, 1991, the City was the only unsecured creditor entitled to se-

lect one of the three Regalridge trustees. The fact is, however, that the plan was amended to allow Heartland to select a trustee as well. No other unsecured claimants have complained of less favorable treatment and Heartland does not have standing to assert a complaint on their behalf in this regard. *In re Orlando Investors, L.P.*, 103 B.R. 593, 597 (Bankr. E.D.Pa.1989).

Section 1123(a)(5) requires that the plan provide adequate means for its implementation. This means that the debtor must offer more than speculation about the source of funding for the plan. *In re Stuart Motel, Inc.*, 8 B.R. 48, 50 (Bankr. S.D.Fla.1980). As previously discussed, debtor failed to provide information about its ability to refinance the property or sell it at a later date for a particular price. Debtor also failed to provide the note and deed of trust to be retained by Heartland. More importantly, debtor failed to show how the plan would be funded absent ninety percent economic occupancy, which had never before been achieved. For these reasons, the plan does not meet the requirements of § 1123(a)(5) and Findings No. 17 will be set aside.

Section 1123(a)(7) requires that the plan contain only provisions consistent with public policy and the interests of creditors and equity security holders regarding the manner of selection of any officer, director or trustee or their successors under the plan. Heartland complains because the plan calls for the selection of a trustee by the NAACP, which is not a creditor of debtor. The record reflects, however, that the NAACP has an interest in maintaining and preserving Regalridge. Heartland fails to show how the plan is inconsistent

---

**9.** Although Heartland's opening brief devotes only one sentence to this issue, debtor's brief and Heartland's reply thereto discuss the issue at some length. Accordingly, the court considers that the issue is properly preserved.

**10.** For example, the plan provides that creditors will receive periodic cash payments at the discretion of the Regalridge trustees "but only to the extent that such payments do not affect the normal operations of the Property." Fourth Amended Plan of Reorganization at ¶ 6.2. In

other words, creditors may or may not receive any such payments.

**11.** Findings No. 16 addresses § 1123(a)(3), but states only that "Article 4 of the Plan describes the treatment to be afforded to each of the impaired classes." To the extent that this statement implies that the requirements of § 1123(a)(3) have been met, it is erroneous and must be set aside.

with, or adverse to, the interests of the public.

▇ Heartland next complains that its cash collateral, that is, rents from the property, has been and will continue to be used to pay administrative expenses including professional fees incurred by debtor. Although cash collateral, *e.g.* rental income, may be used to pay ordinary and necessary operating expenses, it may not be used to pay administrative expenses or general costs of reorganization, except under extraordinary circumstances. *French Market Homestead, F.S.A. v. P.C., Ltd. (In re P.C., Ltd.),* 929 F.2d 203, 205 (5th Cir. 1991); *New Orleans Pub. Serv., Inc. v. First Fed. Sav. & Loan Ass'n (In re Delta Towers Ltd.),* 924 F.2d 74, 76 (5th Cir.1991); *In re Tripplet,* 84 B.R. 84, 87 (Bankr. W.D.Tex.1988). The exception is set forth in 11 U.S.C. § 506(c) and provides that the debtor must show that: (1) the expenditure is necessary; (2) the cost is reasonable; and (3) the expenses were incurred primarily for the benefit of the secured creditor and resulted in a quantifiable direct benefit to that creditor. *In re P.C., Ltd.,* 929 F.2d at 205; *General Elec. Credit Corp. v. Levin & Weintraub (In re Flagstaff Foodservice Corp.),* 739 F.2d 73, 75 (2nd Cir.1984). The claim of an attorney rendering services to an estate is not entitled to priority over the claim of a secured creditor to its collateral. *In re A.J. Lane & Co.,* 113 B.R. 821, 824 (Bankr.D.Mass.1990). Therefore, to the extent the plan calls for the payment of debtor's attorney's fees or any other professional fees or extraordinary expenses out of Heartland's cash collateral, the plan violates § 506(c).

▇ Heartland additionally complains that the plan was improperly solicited, in violation of 11 U.S.C. § 1125, because debtor did not mail to creditors for their review a revised budgeted cash flow statement. Heartland maintains that the revised statement (Heartland's Exhibit 98) "substantially increased the expense projections beyond what was described in the [third amended disclosure statement]" (Heartland's Exhibit 63). Heartland's Brief at 31. Heartland fails to mention that the revised statement

also reflects a greater amount available for debt service. As debtor points out, a bankruptcy court may permit testimony at trial that varies from the information included in its disclosure statement, especially where that evidence indicates even stronger prospects for successful reorganization. *Prudential Ins. Co. v. Monnier (In re Monnier Bros.,* 755 F.2d 1336, 1342 (8th Cir.1985).

▇ Finally, on the subject of the plan's failure to comply with code provisions, Heartland complains that its unsecured claim, the City's unsecured claim, and the unsecured claims of debtor's trade creditors were improperly placed in separate classes in "an attempt to divest Heartland of its substantive right to cast a vote for its unsecured claim." Heartland Brief at 30–31. By placing the unsecured claims in separate classes, debtor made certain that at least one impaired class would vote to accept the plan, making a cramdown possible. *See* 11 U.S.C. § 1129(a)(10). Debtor attempts to justify its separate classification of the City's unsecured claim by noting that the claim was originally secured and now is not. Debtor does not offer, nor has the court found, any support for this position. Debtor additionally argues that its classification, if erroneous, constituted only a technical impropriety because all unsecured claims are treated the same way under the plan. The rule in the Fifth Circuit, however, is that substantially similarly claims should be placed in the same class and, further, that similar claims cannot be classified differently in order to gerrymander an affirmative vote on a reorganization plan. *Phoenix Mutual Life Ins. Co. v. Greystone III Joint Venture (In re Greystone III Joint Venture),* 948 F.2d 134, 139 (5th Cir.1992). As in *Greystone,* there is no support in the record for the bankruptcy court's conclusion that a reasonable basis exists for separate classifications of the unsecured claims. Thus, Findings Nos. 13 and 15 must be set aside.

▇ Heartland also argues that debtor itself has failed to comply with the applicable Bankruptcy Code provisions, as evidenced by debtor's employment of, and

payments to, professionals without prior court approval. Debtor replies that its later filing of motions for authorizations *nunc pro tunc*, which were approved, vitiates its earlier noncompliance with the Code. If that were all that was required, there would be no need for § 1129(a)(2).[12]

### 2. *Good Faith*

■ Heartland maintains that the plan was not proposed in good faith because there is not a reasonable likelihood that the plan will achieve a result consistent with the purposes and objectives of the Bankruptcy Code, *i.e.*, the plan does not provide for expeditious resolution of disputes and speedy payment to creditors. *See In re Madison Hotel Assoc.*, 749 F.2d 410, 424 (7th Cir.1984); *In re Hoosier Hi–Reach, Inc.*, 64 B.R. 34, 38 (Bankr.S.D.Ind.1986). Whether a plan is proposed in good faith must be determined in light of the circumstances surrounding the plan. *In re Texas Extrusion Corp.*, 844 F.2d 1142, 1160 (5th Cir.), *cert. denied*, 488 U.S. 926, 109 S.Ct. 311, 102 L.Ed.2d 330 (1988). In other words, objective, rather than subjective, intent of the debtor determines whether a plan is proposed in good faith.

■ The record does not support a finding of objective good faith, because the plan is not feasible. Moreover, despite the debtor's enthusiasm and the public's interest in maintaining Regalridge as a going concern, debtor's actions during the pendency of the bankruptcy call into question its subjective good faith. For example, debtor violated the bankruptcy court's order regarding the use of rents by knowingly making payments to professionals without prior court approval. Further, at the last minute, debtor filed a motion for approval of amendment to its fourth amended plan of reorganization, which amendment sought to change crucial definitions in the plan so as to enable debtor to consummate

its plan pending Heartland's appeal to this court.[13] Accordingly, Findings No. 22 will be set aside.

### 3. *Approval of Fees and Expenses*

■ Next, Heartland complains that the plan calls for the payment of all fees and expenses to be within the discretion of the Regalridge trustees, who are not subject to court supervision. As debtor correctly notes, however, upon plan confirmation, a debtor is no longer a debtor in possession and the bankruptcy estate ceases to exist. *In re NTG Indus., Inc.*, 118 B.R. 606, 610 (Bankr.N.D.Ill.1990). In other words, the reorganized debtor is a new entity not subject to the jurisdiction of the bankruptcy court, except as provided in the plan. Therefore, approval of fees for post-confirmation services is not required. Moreover, although 11 U.S.C. § 1129(a)(4) calls for approval of fees for preconfirmation services, Heartland does not contend that the fees for any such services have not been disclosed or that approval for payment of same will not be sought. The plan need not contain a specific provision mandating that all relevant payments be subject to court approval. *In re Future Energy Corp.*, 83 B.R. 470, 488 (Bankr.S.D.Ohio 1988).

### 4. *Best Interest Test*

■ Heartland claims that the plan fails to meet the best interest test, which requires that a dissenting creditor must receive on account of his claim property of a value, as of the effective date of the plan, that is not less than the amount the creditor would receive under a Chapter 7 liquidation. *In re Elm Creek Joint Venture*, 93 B.R. 105, 109 (Bankr.W.D.Tex.1988). Debtor responds that Heartland will receive more on its unsecured claim under

---

**12.** The bankruptcy court did not make a specific finding or state a conclusion with regard to § 1129(a)(2).

**13.** Heartland notes that the motion was granted less than twenty-four hours after its filing. The

record does not reflect whether debtor played any active role in presenting the motion for signature without notice to Heartland. The court has not considered the quick approval of the motion as any evidence with regard to debtor's good faith or lack thereof.

the plan than in a liquidation,[14] but the record does not support this contention. As previously stated, debtor made no showing that the property could or would be later sold for an amount sufficient to pay off Heartland's secured claim or to whom such sale would be made. Moreover, because the plan does not set forth the terms of the new deed of trust to be executed in favor of Heartland, there is no assurance that Heartland's rights as a secured creditor will not be altered. Findings Nos. 26 and 27 must be set aside.

### C. Whether the Plan Meets the Requirements for Cramdown

#### 1. *Fairness and Equity*

■ To be confirmed over the objection of an impaired secured creditor, a plan of reorganization must not discriminate unfairly and must be fair and equitable with respect to the secured claim. 11 U.S.C. § 1129(b). "Fair and equitable" as used in the context of a cramdown means that, at a minimum, the secured creditor must receive the indubitable equivalent of his secured claim. *In re Sandy Ridge Dev. Corp.*, 881 F.2d at 1349–50. In other words, mere technical compliance with § 1129(b)(2) does not assure that the reorganization plan is fair and equitable. *Federal Sav. & Loan Ins. Corp. v. D & F Constr., Inc. (In re D & F Constr., Inc.)*, 865 F.2d 673, 675 (5th Cir.1989). Rather, the court must consider the plan as a whole and all of the facts and circumstances surrounding treatment of the creditor's claim. *Id.*

■ The concept of indubitable equivalence was enunciated by Judge Learned Hand in *In re Murel Holding Corp.*:

It is plain that "adequate protection" must be completely compensatory; and that payment ten years hence is not generally the equivalent of payment now. Interest is indeed the common measure of the difference, but a creditor who fears the safety of his principal will scarcely be content with that; he wishes to get his money or at least the property. We see no reason to suppose that the statute was intended to deprive him of that in the interest of junior lienholders, unless by a substitute of the most indubitable equivalence.

75 F.2d 941, 942 (2nd Cir.1935). The indubitable equivalence standard is stringent. *In re Future Energy Corp.*, 83 B.R. 470, 496. Where a secured creditor receives neither his money nor the property upon which he has a lien, the debtor must show by clear and convincing evidence that the protection provided under the plan to the secured creditor is completely compensatory. *In re Murel Holding Corp.*, 75 F.2d at 942; *In re Future Energy Corp.*, 83 B.R. at 481.

■ In this case, the record does not support the bankruptcy court's finding that debtor met the strict requirements of § 1129(b)(2). The record does not contain evidence to support debtor's contention that Heartland will be paid in full, *e.g.* the record does not reflect, because debtor failed to show, what the value of Regalridge will be in fifteen years, that there is any prospect for the sale or refinancing of Regalridge, or who the purchaser or refinancer might be. Moreover, Heartland is not assured that it will retain the liens it now has. Despite debtor's assurance that it intended that the new deed of trust contain the same provisions as the old, no new deed of trust has ever been presented. The plan itself provides that Heartland's secured interest is unaffected except to the extent that it is contrary to the letter and spirit of the plan, whatever that might mean.

#### 2. *The Absolute Priority Rule*

The absolute priority rule provides that a dissenting class of unsecured creditors must be compensated in full before any junior class can receive or retain any property under a plan. 11 U.S.C.

**14.** Debtor further states, echoing the bankruptcy court's statements in item 27 of the Findings, that all unsecured creditors are better off under the plan. The test, however, is not how the plan affects creditors in general, but rather whether the dissenting creditor will receive not less than the amount he would receive under a Chapter 7 liquidation.

§ 1129(b)(2)(C)(ii); *Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988); *Case v. Los Angeles Lumber Prods. Co.,* 308 U.S. 106, 60 S.Ct. 1, 84 L.Ed. 110 (1939). Heartland maintains that the plan violates the absolute priority rule because (1) junior creditors will receive payment before Heartland's secured claim is paid in full and (2) its secured claim is not properly valued.

Heartland's first point is well taken. As discussed in the immediately preceding section of this opinion, the record does not reflect that Heartland will receive the indubitable equivalent of its secured claim. In other words, Heartland's claim may not be paid in full. The plan nevertheless calls for payments to junior lienholders before senior claims are paid. The fact that Heartland also has an unsecured claim does not change the requirements of the absolute priority rule.[15]

 As for the issue of valuation of Heartland's secured claim, Heartland fails to explain why such valuation is relevant to the absolute priority rule, which addresses only the treatment of unsecured claims.[16] Relevancy, *vel non,* Heartland fails to show that the bankruptcy court erred in determining the amount of Heartland's secured claim. The value a secured creditor is entitled to receive and must receive is the value accorded to a buyer in an arm's length transaction, that is, the going concern value of the property. *Lakeside Global,* 116 B.R. at 513. *See also Overholt v. Farm Credit Servs. (In re Overholt),* 125 B.R. 202, 215 (S.D.Ohio 1990). Tax liens and the cost of necessary repairs must be subtracted to determine the fair market value of the property, *i.e.* the allowed secured claim. *In re Groff,* 131 B.R. 703, 707 (Bankr.E.D.Wis.1991); *Beacon Hill Apart-*

*ments Ltd. v. Columbia Sav. & Loan Ass'n (In re Beacon Hill Apartments Ltd.),* 118 B.R. 148, 149 (N.D.Ga.1990); *Wolk v. Goldome Realty Credit Corp. (In re 222 Liberty Assocs.),* 105 B.R. 798, 801 (Bankr.E.D.Pa.1989).

For the reasons discussed in this section VII, Findings Nos. 41, 42, and 43 must be set aside.

## VIII.

### *Orders Nunc Pro Tunc*

Heartland maintains that the bankruptcy court erred in granting *nunc pro tunc* debtor's applications for authority to employ an appraiser, an architect, and a marketing consultant. The record reflects that the appraiser was retained by debtor in the summer of 1990 and paid a $4,000.00 retainer; the architect was retained in April 1990 and as of the confirmation hearing had received compensation of almost $25,-000.00; the marketing consultant had been retained in August 1990 and had been paid approximately $23,000.00 at the time of the hearing. In December 1990, debtor moved for the retroactive approval of its hiring of these professionals. At the hearing on its applications, debtor admitted that the failure to seek prior approval was "merely an oversight" and something that "fell through the cracks." Tr. Vol. I, 10–12.

 The Bankruptcy Code and rules contain specific requirements for the retention and compensation of professionals. *See* Bankruptcy Code §§ 327 and 330; Bankr.R. 2014 and 2016. Courts in this Circuit require strict adherence to these provisions. *See, e.g., In re Consolidated Bancshares, Inc.,* 785 F.2d at 1254 & n. 3. Moreover, *nunc pro tunc* applications are

---

**15.** In support of its first argument, Heartland additionally points to the fact that debtor selected the persons who would select the Regalridge trustees, and further, the fact that a management company owned by debtor's general partner would qualify to be appointed by the Regalridge trustees to manage Regalridge. Heartland fails to show how either of these facts is relevant. The record does not reflect that debtor will have any control over the Regalridge trustees or that any entity affiliated with debtor will be appointed to manage the property. Heart-

land further states that the plan provides, and the disclosure statement indicates, that "interest holders" of debtor are to be discharged upon plan confirmation. Heartland's brief at 40. The plain language of the plan and disclosure statement does not support this contention.

**16.** Valuation of collateral would seem to be an issue more appropriately addressed in the context of feasibility or fairness and equity.

not to be granted except where there are exceptional circumstances. *Fanelli v. Hensley (In re Triangle Chemicals, Inc.),* 697 F.2d 1280, 1289 (5th Cir.1983). Mere oversight in filing a timely application is not an extraordinary circumstance that warrants *nunc pro tunc* approval. *In re Aladdin Petroleum Co.,* 85 B.R. 738, 739 (Bankr.W.D.Tex.1988). The bankruptcy court did not find that rare or exceptional circumstances existed; nor would the record have supported such a finding. Accordingly, the court finds that the orders *nunc pro tunc* approving the employment of professionals must be set aside.

## IX.

### *Denial of Heartland's Administrative Claim*

On or about January 3, 1991, Heartland filed its motion to allow administrative claim. The motion recited that, since January 18, 1990, when the bankruptcy court entered an order for use of rents, debtor had paid for all of its operations with Heartland's cash collateral. Heartland alleged that debtor had expended at least $2,193,334.14 as of September 30, 1990, and that Heartland was entitled, pursuant to 11 U.S.C. § 503(b)(1)(A), to recover as an administrative expense that amount plus whatever amounts had been subsequently expended by debtor for preserving and managing the bankruptcy estate.

Debtor filed an objection to the motion, pointing out that Heartland's reading of the Code was absurd and that Heartland was not entitled to an administrative claim except under 11 U.S.C. § 507(b) if its collateral declined in value during the pendency of the bankruptcy. Heartland responded by completely altering its prior position and asserting that it was entitled to an administrative claim for every expense incurred by debtor that debtor could not prove was reasonable and necessary and incurred for

Heartland's benefit. The bankruptcy court considered the motion at a hearing on January 23, 1991, and denied the relief sought by order signed January 24, 1991.

Heartland includes among its issues on appeal, almost as an afterthought, that the bankruptcy court erred in denying its motion for administrative claim. Although none too clear, Heartland's complaint appears to be that debtor was only entitled to use Heartland's cash collateral if debtor could meet the test of 11 U.S.C. § 506(c).[17] Heartland maintains that debtor could not meet the test with regard to its expenditure of at least $284,000.00,[18] and that, therefore, Heartland should have been granted an administrative claim of that amount.

Case law supports debtor's, rather than Heartland's interpretation of the Code. In a Chapter 11 case, a debtor in possession has a statutory right to use encumbered assets to operate its business. *In re Provincetown–Boston Airline, Inc.,* 66 B.R. 632, 634 (Bankr.M.D.Fla.1986). Indeed, most real property reorganizations would fail if the debtor could not use the income stream generated by the property. *In re Fry Road Assocs., Ltd.,* 66 B.R. 602, 604–05 (Bankr.W.D.Tex.1986). The right to use collateral necessary to reorganization may not be taken away unless the secured creditor can demonstrate that it cannot otherwise be adequately protected. *In re Provincetown–Boston Airline, Inc.,* 66 B.R. at 634. In that event, the remedy available to the secured creditor is not through § 503(b), but rather through § 507(b). *First State Bank v. Advisory Information and Management Systems, Inc. (In re Advisory Information and Management Systems, Inc.,* 50 B.R. 627, 629 (Bankr.M.D.Tenn.1985).

The purpose of § 503(b) is to encourage third parties to provide goods and services necessary for successful reorgani-

---

**17.** Appellant further asserts that, "under general principles of subrogation", it "stands in the shoes of those administrative claimants who received its cash collateral." Appellant's brief at 52. The court is unable to comprehend this argument.

**18.** The court is unclear as to whether this amount is supported by the record. Appellant cites its own statement of facts in support of this figure, although the amounts recited therein total only $84,971.00.

zation. *In re Jartran, Inc.*, 732 F.2d 584, 588 (7th Cir.1984). The Code and case law simply do not support any argument that § 503 was intended as an optional remedy to adequate protection provided by § 361. *In re Provincetown–Boston Airline, Inc.*, 66 B.R. at 634. As one court has stated, "the secured creditor is not contributing to the estate by allowing a debtor in possession to use collateral which it already owns and has a statutory right to use." *Id.*

## X.

### *Deposit of Consideration*

■ The final section of Heartland's appeal brief addresses the bankruptcy court's failure to require the deposit of monies to be distributed upon plan confirmation into a special account. Heartland maintains that the special account is necessary to assure that funds generated from the operation of Regalridge not be used to pay the claims of junior creditors. Heartland asserts that the denial of its motion constituted an abuse of discretion, but cites no authority in support of this proposition. The court is unable to find that the bankruptcy judge abused his discretion in this regard.

## XI.

### *Further Proceedings*

■ There does not appear to be a reasonable likelihood that a confirmable plan could be proposed under the facts of this case. Accordingly, there is no reason why the automatic stay should not be lifted to allow Heartland to foreclose its liens in the property. Further, orders should be made by the bankruptcy court to cause the estate to be reimbursed for any payments it has made to the appraiser, the architectural design and supervision company, and the marketing agent as authorized by the bankruptcy court.

## XII.

### ORDER

For the reasons set forth herein,

The court ORDERS that:

1. The bankruptcy court's findings of fact and conclusions of law Nos. 12, 13, 15, 17, 22, 26, 27, 31, 36, 37, 38, 41, 42 and 43 be, and are hereby, set aside;

2. The bankruptcy court's orders (a) confirming debtor's fourth amended plan of reorganization, (b) employing and retaining James W. Daniels & Associates, Inc., as appraiser, and (c) employing and retaining John R. Horton, Inc., as architectural design and supervision company, and the ruling of the bankruptcy judge approving the employment of the marketing agent, *nunc pro tunc*, be, and are hereby, REVERSED; and

3. The consolidated actions be, and are hereby, remanded for further proceedings consistent with this memorandum opinion and order.

### APPENDIX

### IN THE UNITED STATES BANKRUPTCY COURT

### FOR THE NORTHERN DISTRICT OF TEXAS

### FORT WORTH DIVISION

CASE NO. 489–44447–MT–11

Filed April 24, 1991

In re; Briscoe Enterprises, Ltd. II, d/b/a Regalridge Square Apartments, Debtor.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

At Fort Worth, Texas, in said District:

Debtor, Briscoe Enterprises, Ltd., II, d/b/a Regalridge Square Apartments ("Briscoe"), filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on the 29th day of December, 1989.

On the 23rd day of January, 1991, the Court commenced a hearing on Confirmation of the Debtor's Fourth Amended Plan of Reorganization, continuing on the 24th, 25th and 28th day of January, 1991 and concluding on the 18th day of March, 1991,

in the above-styled and numbered bankruptcy case.

Debtor appeared by and through its counsel of record, Weil, Gotshal & Manges. Heartland Federal Savings and Loan ("Heartland"), the only party objecting to confirmation of the Plan of Reorganization, appeared by and through its counsel of record, Gardere & Wynne.

Pursuant to the Court's oral ruling, confirming Debtor's Fourth Amended Plan of Reorganization and after hearing the testimony and evidence presented and reviewing the pleadings, legal memoranda, written arguments of counsel, and legal precedent relevant to the dispute, this Court makes the following additional Findings of fact and Conclusions of Law:

### Background

1. On December 29, 1989, Briscoe Enterprises, Ltd. II (the "Debtor") filed a voluntary petition under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

2. The Debtor's principal asset is a 784-unit low to moderate income property more commonly known as the Regalridge Square Apartments (the "Property"). The Property is located at 4500 Campus Drive, Fort Worth, Texas.

3. Heartland holds an undisputed first lien on the real property comprising the Property pursuant to (a) a Deed of Trust, Assignment of Rents and Security Agreement dated January 31, 1984, which Deed of Trust is recorded in Volume 7731, Page 1534, *et seq.* of the Deed of Trust Records of Tarrant County, Texas, and (b) that certain Deed of Trust, Assignment of Rents and Security Agreement dated April 11, 1983, which Deed of Trust is recorded in Volume 7486, Page 2280, *et seq.* of the Deed of Trust Records of Tarrant County, Texas. The amount owed to Heartland by the Debtor exceeds the value of the Property. As a result, Heartland is undersecured

and holds a substantial unsecured claim against the Debtor. Additionally, because of the value of the Property and the amounts owed to Heartland, a second lien exceeding $7 million on the Property in favor of the City of Fort Worth also has become a substantial unsecured claim.[1] Because of the lapse of Heartland's UCC–1 Financing Statement, the Debtor has sought to avoid Heartland's lien in and to the personalty, which partially comprises the Property. This Court entered an order denying the Debtor's avoidance action and that issue is currently on appeal to the District Court. The Disposition of that appeal is not relevant to whether the Plan should be confirmed.

4. In June, 1990, Debtor filed its Plan of Reorganization. Thereafter, Debtor's initial bankruptcy counsel was disqualified from further representation of the Debtor in this case. A motion to dismiss or convert this case to a case under Chapter 7 was filed by Heartland. If the case were dismissed or converted, one possible outcome would be Heartland obtaining ownership of the Property through foreclosure.

5. Debtor subsequently retained substitute counsel and thereafter, on November 16, 1990, filed its First Amended Plan of Reorganization, which was later modified by the filing of the Debtor's (a) Second Amended Plan of Reorganization on December 12, 1990, (b) Third Amended Plan of Reorganization on December 20, 1990, and (c) Fourth Amended Plan of Reorganization on January 22, 1991. The Fourth Amended Plan of Reorganization (the "Plan") was the Plan of Reorganization ultimately presented to the Court for confirmation.

6. On November 16, 1990, the Debtor filed its First Amended Disclosure Statement, which was later modified by the filing of the Debtor's (a) Second Amended Disclosure Statement on December 12, 1990, and (b) Third Amended Disclosure Statement on December 20, 1990. The Third Amended Disclosure Statement (the "Disclosure Statement") was approved by

---

**1.** The City of Fort Worth is also the holder of an *ad valorem* tax claim which is separate and distinct from its $7 million undersecured claim.

the Court on December 21, 1990, as containing adequate information as required by 11 U.S.C. § 1125.

7. The deadline established by the Order for voting on the Plan was January 18, 1991. On January 14, 1991, Heartland filed its objection to the Plan (the "Objection"). No other creditor filed an objection to the Plan. All other creditors and classes allowed to vote on the Plan voted to accept the Plan. Heartland, the Class 4 creditor, voted to reject the Plan, both in its secured and unsecured capacity. The Debtor and Heartland each filed their respective memoranda in support of and in opposition to the Plan.

8. On January 23, 1991, the Court began the confirmation hearing on the Debtor's Plan and Heartland's Motion to Convert or Dismiss. The confirmation hearing continued over a period of five days on January 23, 24, 25 and 28, and March 14, 1991. Closing arguments were made by the parties at the close of the confirmation hearing on March 14, 1991.

9. Upon consideration of the Plan and the Objection filed by Heartland, and the Court having considered and admitted into evidence for purposes of the confirmation hearing, the documents identified in the exhibit lists filed by the Debtor and Heartland, together with the pleadings and other papers filed in this case, and the evidence and arguments of counsel having been presented to this Court, in accordance with Bankruptcy Rules 7052 and 9014, the Court makes the following Findings of Fact and Conclusions of Law:

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

10. This Court has jurisdiction over this case. Confirmation of the Plan and Heartland's Motion to Convert or Dismiss are "core" matters. 11 U.S.C. § 1129; 28 U.S.C. § 157(b)(1), § 157(b)(2)(A), (L), (O), and § 1334.

11. The modifications to the Plan, which were included in the Plan after voting thereon, but prior to confirmation, do not adversely change the treatment of the claim of any creditor of the Debtor. *See* Bankruptcy Rule 3018.

### *Section 1129(a)(1)*

12. The Plan complies with the applicable provisions of the Bankruptcy Code.

13. Article 3 of the Plan designates six (6) separate classes of claims and interests. 11 U.S.C. § 1123(a)(1). The claims and interests in each class are based upon separate and distinct legal natures. Therefore, a reasonable basis exists for separate classifications of these claims and interests. The claims and interests in each class under the Plan are substantially similar and their classification satisfies the requirements of § 1122(a) of the Bankruptcy Code.

14. Heartland objected to the Plan on the grounds that the Plan did not specify whether the Administrative Claims or the Priority Claims are impaired. Such a designation with respect to Administrative Claims and Priority Claims is unnecessary. Pursuant to § 1129(a)(9) of the Bankruptcy Code, the Administrative Claims and Priority Claims cannot be impaired. The class of interest holders is also not specified as unimpaired. Such a designation is meaningless because the interest holders did not receive or retain any property under the Plan and, hence, are deemed not to have accepted the Plan. 11 U.S.C. § 1126(g).

15. Heartland also objected to the Plan on the grounds that both its deficiency claim and its secured claim were included in one class. If Heartland had made an election under § 1111(b) election, its unsecured claim should technically have been classified separately from its secured claim. The Court accepted the Plan which provided for separate classification of Heartland's secured and unsecured claims. Heartland's secured claim will receive the treatment provided in Class 4 while its unsecured claim will receive the same treatment as provided in Class 5. Two unsecured classes of non-insider creditors voted to accept the Plan; thus, the control of two classes by Heartland effectuates a non-substantive and technical amendment

to the Plan. The Court recognizes the "well established principle that relief under bankruptcy laws is not to be withheld because of technicalities." *Kane v. Johns–Manville, (In re Johns–Manville)*, 843 F.2d 636, 648 (2nd Cir.1988) (cite omitted). Heartland's objections to confirmation of the Plan based on technical issues relating to classification are overruled.

16. Article 4 of the Plan describes the treatment to be afforded to each of the impaired classes. 11 U.S.C. § 1123(a)(3).

17. Article 5 of the Plan provides adequate means for execution and implementation of the Plan. 11 U.S.C. § 1123(a)(5). Section 5.2 of the Plan provides that at closing, the Regalridge Trust will be established for the purposes of owning, managing, and operating the Property. The property will be transferred to the Regalridge Trust upon the effective date. The Plan further provides that all interests in the Debtor will be deemed cancelled.

18. The Plan further provides that on the effective date, the Regalridge Trust will be executed by the Debtor and the Regalridge Trustees. The Plan provides for the appointment of three (3) Regalridge Trustees to hold and manage the Property. The Regalridge Trustees will be appointed one each by the City of Fort Worth, the Fort Worth NAACP, and Heartland. The third Regalridge Trustee will be appointed by Heartland. The Plan also specifies the minimum qualifications for the Regalridge Trustees. Each Regalridge Trustee must be (a) a resident of the City of Fort Worth; (b) at least 35 years of age; (c) uninvolved in any business or partnership with Leonard E. Briscoe, Sr. or the Debtor; and (d) unrelated to and not a close personal friend of Leonard E. Briscoe, Sr. The Plan further provides that the Regalridge Trustees will receive no compensation for their services but may receive reimbursement of their actual and necessary expenses incurred in carrying out their responsibilities under the Trust. In addition, the Regalridge Trustees will serve without bond. The Court finds that the provisions of the Plan regarding the selection of the Regal-

ridge Trustees are consistent with the interest of creditors and with public policy.

19. The Plan provides for the distribution to creditors on a pro rata basis of the cash flow on at least an annual basis.

20. The Plan provides for the transfer of the Property to the Regalridge Trust, which is not a corporation. Thus, § 1123(a)(6), made applicable to this case by § 1129(a)(1), is not applicable.

21. The manner and selection of the Regalridge Trustees is consistent with the interests of creditors and with public policy. The Debtor has disclosed the identity and affiliation of the Regalridge Trustees who have been appointed by the Fort Worth NAACP and the City of Fort Worth. The appointment and qualifications of the Regalridge Trustees are consistent with the interests of creditors and public policy.

### Section 1129(a)(3)

22. The Plan has been proposed in good faith and not by any means forbidden by law. 11 U.S.C. § 1129(a)(3). In order to determine whether a plan has been proposed in good faith, the Court must look to the totality of the circumstances surrounding the formation of the Plan. *In re Texas Extrusion Corp.*, 844 F.2d 1142, 1160 (5th Cir.), *cert. denied*, 488 U.S. 926, 109 S.Ct. 311, 102 L.Ed.2d 330 (1988). A plan proposed with a legitimate and honest purposes, and which has a reasonable hope of success, satisfies the good faith requirement. *In re Sun Country Dev., Inc.*, 764 F.2d 406, 408 (5th Cir.1985). The Plan provides a vehicle for restructuring the debt of the Property and preserving the Property for the benefit of both creditors and the Fort Worth community. Moreover, none of the interest holders of the Debtor will retain anything under the Plan. Consequently, the Plan has been proposed in good faith and not by any means forbidden by law.

### Section 1129(a)(4)

23. Section 1129(a)(4) requires that payments for services or for costs and expenses in and in connection with the case, or in connection with the Plan and incident

to the case, either have been approved by the Court as reasonable or are subject to approval of the Court as reasonable. Interim payments remain subject to review and approval by this Court on final application. The Plan provides that any other payments falling within the parameters of § 1129(a)(4) will not be made without Court approval.

### Section 1129(a)(5)

24. Section 1129(a)(5) requires the Debtor to disclose the identity of certain individuals who will hold positions with the Debtor or its successor after confirmation of the Plan. The Debtor will not retain any interest in the Property after confirmation. Instead, Regalridge Trustees will be appointed to administer the Regalridge Trust which will own and hold the Property. The appointment of the Regalridge Trustees pursuant to the provisions of the Plan and as discussed herein is consistent with the interests of creditors and public policy.

### Section 1129(a)(6)

25. There are no rates applicable to the Debtor's business over which any regulatory commission will have jurisdiction after confirmation. 11 U.S.C. § 1129(a)(6).

### Section 1129(a)(7)

26. The Plan satisfies the requirements of § 1129(a)(7), the best interests of creditors test. Under the Plan, Classes 3, 4 and 5 are impaired. With respect to Classes 3 and 5, each voting holder of a claim in such class will receive or retain under the Plan on account of the claim property of a value, as of the effective date, that is not less than the amount that each holder would receive or retain if the Debtor were instead liquidated under Chapter 7 of the Bankruptcy Code on the effective date or has accepted the Plan.

27. With respect to satisfaction of § 1129(a)(7) regarding the claims of Heartland, the Debtor presented evidence to the Court which shows that the Property will probably support debt service equal to Heartland's secured claim of $8.2 million.

In other words, Heartland will receive the present value of its secured claim. In addition, the Court finds, based on the evidence presented, that over the next six years, money will be available as cash flow for distribution to creditors whose claims will be treated as unsecured Class 5 claims after payment of ordinary and necessary operating expenses and payment of debt service on Heartland's secured claim. The unsecured deficiency claim of Heartland, which is approximately $10 million, will receive the same treatment provided for Class 5 claims. The Debtor provided additional evidence which showed that in the event of liquidation in a Chapter 7 case, only the priority claim of the City of Fort Worth and the secured claim of Heartland (Classes 2 and 4, respectively) would receive any consideration. Consequently, in a Chapter 7 liquidation case, no amounts would be available for distribution to creditors whose claims are treated as unsecured Class 5 claims under the Plan.

### Section 1129(a)(8)

28. Section 1129(a)(8) requires that each impaired class of claims or interests have accepted the Plan. The City of Fort Worth timely file a ballot to accept the Plan based upon its Class 2 claim. The Court finds that based on Ballots filed with this Court, the City of Fort Worth voted its impaired Class 3 claim to accept the Plan. The unsecured Class 3 claim of the City of Fort Worth exceeds $7 million. The Court also finds that: (i) six Class 5 creditors also timely filed ballots to accept the Plan; (ii) five additional Class 5 creditors voted to accept the Plan, but such ballots were received after the deadline for filing the ballots; and (iii) no Class 5 creditors voted against the Plan. After considering the evidence presented, the Court finds that based upon the timely filed Ballots by Class 3 and Class 5 creditors, such claims are sufficient in number and amount to constitute acceptance by such classes of the Plan pursuant to 11 U.S.C. § 1126. Because both the unsecured and secured claims of Heartland voted to reject the Plan, the Plan does not satisfy the requirements of § 1129(a)(8). The holders of in-

terests in Class 6 will neither receive nor retain property under the Plan, and therefore, are deemed to have rejected the Plan. 11 U.S.C. §§ 1126(g).

### Section 1129(a)(9)

29. Section 1129(a)(9) contains a number of requirements concerning the payment of priority claims. The Plan meets the requirements of two subsections of Section 1129(a)(9) by providing for payment in full of priority claims in cash on or before the later of the effective date of the Plan and the date a priority claim is allowed.

### Section 1129(a)(10)

30. The holders of claims in at least one impaired class under the Plan have accepted the Plan, determined without including any acceptance of the Plan by an insider of the Debtor which holds a claim in that class. In this case, Class 3, an impaired class, has voted to accept the Plan. None of the creditors in Class 3 are insiders within the meaning of § 1129(a)(10).

### Section 1129(a)(11)

31. The Plan is feasible and has a marginal prospect of success. The reorganized Debtor is capable of performing under the Plan and confirmation will not likely be followed by the need for further financial reorganization or liquidation of the Debtor or its successor except to the extent that the Plan provides for liquidation and reorganization.

32. The Plan contemplates the use of operating revenue for the success of the Plan. In order to determine whether the Plan is feasible, the Court is required to determine (a) the value of Heartland's secured claim; and (b) the likelihood that the Property can generate sufficient cash flow to pay its ordinary and necessary operating expenses, meet debt service and produce a surplus for distribution to creditors.

33. Section 506(a) of the Bankruptcy Code provides that an allowed claim of a creditor secured by a lien on property in which the estate has an interest is secured to the extent of the value of that creditor's interest in such property and is an unsecured claim to the extent that the value of the creditor's interest is less than the amount of its allowed claim. The value of the creditor's secured claim is to be determined in light of the purpose of the valuation and the proposed disposition of the Property.

34. In the instant case, the Debtor has approximately $750,000 in pre-petition *ad valorem* taxes which upon sale or other disposition of the Property would be paid before Heartland's secured claim. In addition, the Debtor presented evidence that approximately $250,000 to $300,000 is needed to make repairs on the Property.

35. The Debtor presented evidence by its appraiser, James Daniels, MAI, that the value of the Property is $9.2 million, if the taxes are paid and if the needed repairs have been made. The Court finds Mr. Daniels' testimony credible and convincing, and therefore, finds that the value of the Property, as is, that is after taking into consideration the $750,000 tax lien held by the City of Fort Worth that will not be paid in full at confirmation, and after making a deduction for repairs, is $8.2 million. *See* Transcript of Hearing, pp. 38–55. The Court finds that the value of Heartland's secured claim is $8.2 million.

36. The Debtor's financial projections showed that with income of $200,000 per month, the Property will generate sufficient cash flow to pay: (i) necessary and normal operating expenses; (ii) the secured debt of Heartland at a market rate of interest; and (iii) a dividend to creditors whose claims are treated as Class 5 claims on at least an annual basis. The Debtor's evidence further showed that for the past several months, the Debtor has met or exceeded the $200,000 per month income that will be needed to fund the Plan. The evidence further showed that occupancy at the Property has increased from approximately 55% at the commencement of the case to its current level of 85%. The Debtor presented further evidence that occupancy at the Property will probably increase to approximately 90% within the first half of

this year. The Court accepts the Debtor's projections but cautions that the Debtor will have to work diligently to make this Plan succeed.

37. The Debtor also has demonstrated its ability to make the needed repairs on the Property. Prior to the continuation of the confirmation hearing on March 14, 1991, counsel for the Debtor and Heartland announced to the Court a resolution of the adversary proceeding filed by the Debtor against Heartland for turnover of certain insurance proceeds in order to make the repairs on the Property. Pursuant to the agreement reached by the parties, Heartland has consented to the Debtor's use of approximately $225,000 of insurance proceeds not only to make repairs on the Property that are covered by the insurance proceeds but also to use any excess insurance proceeds to make additional repairs on the Property. While some of the repairs are urgent in nature, the Debtor presented testimony that some of the repairs could be delayed throughout the remainder of the year and that such deferred repairs could be paid for from cash flow that will be available by the end of the year.

38. Based on the evidence presented herein, the Court finds that the Plan is not likely to be followed by the need for further financial reorganization or liquidation and is feasible.

### Section 1129(a)(12)

39. All fees payable under 28 U.S.C. § 1930, and determined by the Court at the confirmation hearing, have been paid or the Plan provides for such payment.

### Section 1129(a)(13)

40. The Debtor has no retiree plans, funds, or programs that provide for the payment of retiree benefits as defined in § 1114 of the Bankruptcy Code.

### Section 1129(b)

41. Heartland voted its secured and unsecured claims to reject the Plan. Notwithstanding such rejection, the Plan may be confirmed pursuant to § 1129(b) of the Bankruptcy Code because the Plan satisfies the requirements of § 1129(a) except subparagraph (a)(8), does not discriminate unfairly against Heartland, and is fair and equitable.

42. The Plan is fair and equitable to Heartland because Heartland will retain the lien securing its claim and will receive on account of its claim deferred cash payments totaling at least the allowed amount of its claim of a value, as of the effective date of at least the value of Heartland's interest in the Property. The Plan provides that Heartland's secured claim will be paid in monthly installments of principal and interest as though amortized over thirty years. Interest on the secured claim will be paid at the rate of ten and one-quarter percent (10.25%) per annum which is the same rate of interest included in the January 31, 1984 promissory note from the Debtor to Heartland (or its Predecessor). The outstanding principal balance of Heartland's secured claim will be paid on the earlier of the sale of the Property or the expiration of fifteen (15) years after the effective date. Based upon the evidence presented at the confirmation hearing, the Court finds that the rate of interest to be paid to Heartland on account of its secured claim together with the scheduled amortizing payments of principal to be made pursuant to the Plan will provide Heartland with payments totaling the present value of its secured claim.

43. Moreover, the treatment of Heartland's deficiency claim in Class 5 is identical to the treatment of all creditors whose claims are being treated in Class 5. Thus, the Plan protects the legal rights of Heartland's unsecured deficiency claim consistent with the treatment afforded to the accepting unsecured Class 3 and Class 5 claims. The Plan also is fair and equitable to the unsecured and secured claims of Heartland because no holder of any claim or interest junior to Heartland's claims under the Plan will receive or retain on account of the junior claim or interest any property under the Plan. In addition, implicit in the fair and equitable standard of § 1129(b) is the requirement that single

claims not receive a recovery greater than 100% of their claims, based on the evaluation of distribution at the time of the confirmation hearing. No class of holders of claims that are senior to the Class 4 claim under the Plan will receive distribution having the value determined as of the time of the confirmation hearing in excess of the allowed amount of such holder's claim.

### SUMMARY

Based upon the foregoing Findings of Fact and Conclusions of Law, it is appropriate for this Court to CONFIRM Debtor's Fourth Amended Plan of Reorganization, Overrule Heartland's Objections to such Plan and Deny Heartland's Motion to Dismiss or Convert.

All further relief not expressly granted herein is denied.

This Court shall enter an Order in conformity with the Findings of Fact and Conclusions of Law entered this date.

IT IS SO ORDERED.

SIGNED: April 23, 1991

/s/ Massie Tillman
HONORABLE MASSIE TILLMAN
UNITED STATES BANKRUPTCY
JUDGE