FILED
United States Court of Appeals
Tenth Circuit

June 23, 2014

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

ASARCO LLC, a Delaware limited
liability company,

       Plaintiff - Appellant,

v.

UNION PACIFIC RAILROAD
COMPANY, a Delaware corporation;
UNION PACIFIC CORPORATION, A
Utah corporation; PEPSI-COLA
METROPOLITAN BOTTLING CO.,
INC., a New Jersey corporation;
BOTTLING GROUP, LLC, a
Delaware limited liability company,

       Defendants - Appellees.

No. 13-1435

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 1:12-CV-03216-REB-MJW)

---

E. Duncan Getchell, Jr. of McGuire Woods, LLP, Richmond, Virginia, (Gregory
Evans and Laura G. Brys of Integer Law Corporation, Los Angeles, California;
Stephen A. Bain and Samuel S. Bacon of Welborn Sullivan Meck & Tooley, P.C.,
Denver, Colorado, on the briefs), for Plaintiff-Appellant.

Carolyn McIntosh of Patton Boggs LLP, Denver, Colorado, (Christa Lee Rock of
Patton Boggs LLP; Jonathan H. Steeler, Julie A. Rosen and Richard C. Kaufman
of Ryley Carlock & Applewhite, Denver, Colorado, with her on the brief), for
Defendants-Appellees.

Before **BRISCOE,** Chief Judge, **MCKAY** and **PHILLIPS**, Circuit Judges.

---

**BRISCOE**, Chief Judge.

---

The plaintiff, ASARCO LLC ("ASARCO"), appeals the district court's dismissal of its complaint. ASARCO sought contribution from Union Pacific Railroad Company, Union Pacific Corporation (collectively "Union Pacific"), Pepsi-Cola Metropolitan Bottling Co., Inc., and Bottling Group, LLC (collectively "Pepsi") under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"). The district court ruled that ASARCO's direct contribution claim was time-barred under CERCLA § 113 (42 U.S.C. § 9613); that post-bankruptcy ASARCO was not a subrogee of pre-bankruptcy ASARCO; and that ASARCO could not bring a subrogation claim. ASARCO appeals all three of these rulings. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm the district court's dismissal.

**I. BACKGROUND**

This case stems from pollution at a four-square-mile area in Denver known as the Vasquez Site. Debtor-ASARCO, Union Pacific, and Pepsi all operated at the site, allegedly contributing to the release of hazardous substances there.[1] The

---

[1] For ease of understanding, we will use the term "debtor-ASARCO" to refer to the company that existed prior to and during the bankruptcy process, and
(continued...)

2

Environmental Protection Agency ("EPA") brought a CERCLA action against debtor-ASARCO, which was still pending when debtor-ASARCO filed for Chapter 11 bankruptcy on August 9, 2005, in the United States Bankruptcy Court for the Southern District of Texas. In 2006, the EPA filed proofs of claim in debtor-ASARCO's bankruptcy case, seeking recovery of its expenses for cleaning up the Vasquez Site.[2] In 2009, debtor-ASARCO moved for approval of a settlement in which it agreed to pay "over $1.5 million to resolve its CERCLA liabilities at the Vasquez Site ('Vasquez Site Settlement')." App'x at 15.

*The Settlement Agreement*

The settlement stated that it was "intended to serve as a comprehensive settlement of the claims by the Governments against [debtor] ASARCO with respect to all past costs and any potential future costs incurred by the Governments (including, but not limited to, response costs . . . )" of several sites, including the Vasquez Site. Id. at 185.[3] The agreement was "not conditioned upon confirmation of any particular plan of reorganization." Id. The agreement

[1](...continued)
the terms "ASARCO" and "reorganized ASARCO" to refer to the company that existed after the bankruptcy plan became effective.

[2] The full amount of EPA's filed proofs of claim for the Vasquez Site was $3,439,481, plus interest. App'x at 160.

[3] The bankruptcy court referred to it as the "Miscellaneous Federal and State Environmental Settlement Agreement." App'x at 231. It was one of five settlements that together resolved $3.5 billion of environmental claims against the bankruptcy estate. Id. at 234.

stated it was subject to a public notice and comment period and "subject to approval by the Bankruptcy Court pursuant to Bankruptcy Rule 9019." Id. at 213. The agreement stated it bound "the parties" and "any reorganized debtors under a confirmed plan of reorganization (the 'Reorganized Debtors'), and any trustee . . . appointed in the Bankruptcy Case." Id. at 193.

Paragraph eight stated, in relevant part:

> **In settlement and full satisfaction** of all claims and causes of action of the United States on behalf of the [EPA] against Debtors with respect to any and all costs of response incurred, or to be incurred, in connection with . . . the Vasquez Boulevard/I-70 Site . . . **the United States on behalf of the EPA shall have an allowed general unsecured claim** in the total amount of $55,402,390, which shall be allocated as follows: . . . (iv) **Vasquez Boulevard/I-70 Site - $1.5 million** . . . .

Id. at 193-94 (emphasis added).[4] The agreement contained covenants not to sue the debtors and reorganized debtors, but did not release any other party from liability. The agreement granted the debtors and reorganized debtors protection from contribution actions by other potentially responsible parties ("PRPs") under CERCLA § 113(f)(2) (42 U.S.C. § 9613(f)(2)) "for matters addressed in this Settlement Agreement," including "all costs of response incurred or to be incurred by the United States or any other person relating to or in connection with" the

---

[4] The settlement resolved claims by the EPA and the state of Colorado but not claims by Denver's local governments, which were also excluded from the scope of the contribution protection.

4

Vasquez Site.  Id. at 207-08.

On June 5, 2009, the bankruptcy court entered an order approving the settlement agreements.  The court had evaluated the settlements and determined they were "(i) [] fair, equitable, and in the best interests of the estate; (ii) [] well within the range of reasonableness; and (iii) [] fair, reasonable, and consistent with the purposes of environmental law, including [CERCLA]."  Id. at 236-37. The court noted that the settlements contained "comprehensive covenant[s] not to sue for civil environmental liability associated with these sites" as well as protection from contribution actions by other PRPs for the covered sites.  Id. at 249.  The bankruptcy court analyzed the settlements under the standard of Federal Rule of Bankruptcy Procedure 9019, which considered whether the settlements were "fair, equitable, and in the best interest of the estate."  Id. at 250.  The bankruptcy court then evaluated whether the agreements were "reasonable, fair, and consistent with [CERCLA's] statutory aims."  Id. at 301.  The court concluded that the settlements also met this standard.

*The Bankruptcy Plan*

The seventh amended plan of reorganization ("the bankruptcy plan" or "the plan") was confirmed on November 13, 2009, by the United States District Court for the Southern District of Texas, and became effective on December 9, 2009. The plan defined "ASARCO" as "ASARCO LLC."  Id. at 421.  "ASARCO LLC" was defined as "a Delaware limited liability company and one of the Debtors

5

herein." Id. at 422. "ASARCO Protected Parties" included the debtors and Reorganized ASARCO. Id. "Reorganized ASARCO" was defined as "ASARCO and/or any of its successors, successors-in-interest, and assigns . . . on or after the Effective Date." Id. at 447. It defined the "Effective Date" of the bankruptcy plan as "the first Business Day upon which all of the conditions to occurrence of the Effective Date contained in Article 9.1 of the Parent's Plan have been satisfied . . . ." Id. at 434.

The bankruptcy plan stated that all environmental unsecured claims, including the Vasquez Site claim, would be paid in full on the effective date. On the effective date of the plan, except as otherwise stated in the plan, reorganized ASARCO would be vested with "all of ASARCO's and its Estate's property and assets," id. at 368 (section 10.12), as well as "[a]ny and all claims and causes of action that were owned by ASARCO or its Estate as of the Effective Date," id. at 369 (section 10.13), with reorganized ASARCO as "the only Entity entitled to pursue such claims or causes of action." Id. The "Schedule of Preserved Litigation Claims" specifically reserved claims against other PRPS for contribution for environmental damages. Id. at 399, 402, 406. Section 10.11 stated that "Reorganized ASARCO shall continue its existence after the Effective Date," and that "[t]he equity interests in Reorganized ASARCO shall continue to be held by ASARCO USA Incorporated." Id. at 368. Section 12.3 stated that "[e]xcept as otherwise expressly provided in the Parent's Plan, none of the

6

ASARCO Protected Parties shall be deemed a successor or successor-in-interest to any of the Debtors or to any Entity for which Debtors may be held legally responsible . . . ." Id. at 378. The plan's treatment of claims functioned as satisfaction for all claims against the debtor or the estate, except as otherwise provided in the plan. Id. at 371.

*History of Current Lawsuit*

ASARCO filed this lawsuit against Union Pacific and Pepsi on December 10, 2012. ASARCO alleged that it paid more than its fair share of the costs for the Vasquez Site, and because Union Pacific and Pepsi also allegedly contributed to the pollution at the Vasquez Site, they owed ASARCO for a portion of the remediation costs. ASARCO brought two claims: 1) a direct contribution claim under CERCLA § 113(f), codified at 42 U.S.C. § 9613(f)(1); and 2) a contribution claim as debtor ASARCO's subrogee under CERCLA §§ 107, 112, and 113, codified at 42 U.S.C. §§ 9607, 9612, and 9613, respectively. Union Pacific and Pepsi filed motions to dismiss. In response, ASARCO withdrew its reliance on CERCLA § 112.

The magistrate judge assigned recommended dismissing both counts. As regards the contribution claim (count I), the magistrate judge found that the action was untimely: the statute of limitations began on June 5, 2009, when the bankruptcy court approved the settlement agreement, but the complaint was not filed until December 10, 2012, over three years later. "The plain language of

CERCLA § 113(g)(3)(B) prohibits a contribution action more than three years after 'the date . . . of entry of a judicially approved settlement.'" Id. at 1113 (quoting 42 U.S.C. § 9613(g)(3)(B)). The bankruptcy court approved the settlement on June 5, 2009, and it was effective on that day by its own terms. "Furthermore, contrary to plaintiff's assertion, 'the date a settling party makes payment is irrelevant.'" Id. (quoting ASARCO LLC v. Atl. Richfield Co., No. CV 12-53-H-DLC, 2012 WL 5995662, at *2 (D. Mont. Nov. 30, 2012)). The magistrate judge was persuaded by Atlantic Richfield and ASARCO LLC v. Xstrata PLC, No. 2:12-CV-527-TC, 2013 WL 2949046 (D. Utah June 14, 2013), which both "similarly discounted plaintiff's argument that in the bankruptcy context 'entry of a judicially approved settlement' means approval of the Bankruptcy Plan." Id. at 1114.

The magistrate judge provided two reasons for dismissing the subrogated contribution claim (count II). First, the magistrate judge rejected ASARCO's argument that as the reorganized debtor, it was "a separate legal entity from the former Debtor" who then "paid the Debtor's CERCLA liability." Id. Citing Cross Media Marketing Corp. v. CAB Marketing, 367 B.R. 435, 451 (Bankr. S.D.N.Y. 2007), the magistrate judge evaluated the bankruptcy plan to decide if it established the plaintiff was the same entity as the debtor. Id. at 1115. The magistrate judge noted that the bankruptcy plan:

(1) defines "Reorganized Asarco," which is plaintiff

8

here, to be one and the same as the Debtor as of the Effective Date. It defines "Reorganized ASARCO" as "ASARCO and/or any of its successors . . . on or after the Effective Date . . . and defines "ASARCO" as "ASARCO LLC" which is "a Delaware limited liability company and one of the Debtors herein" . . .
(2) continues the Debtor's corporate existence as Reorganized Asarco; it provides that "Reorganized ASARCO shall continue its existence after the Effective Date" and the "equity interests in Reorganized ASARCO shall continue to be held by ASARCO USA Incorporated" . . .
(3) vests the claims and causes of action of the Debtor and the Estate in Reorganized ASARCO . . . [citing plan sections 10.12 and 10.13] and
(4) maintains the Debtor's identical equity owners in Reorganized Asarco [citing plan section 10.11].

Id. at 1115-16. The magistrate judge held that "the Debtor and plaintiff ASARCO LLC are not separate legal entities for the purposes of pursuing post-confirmation subrogation claims. Having paid its own debt, plaintiff is not entitled to assert a subrogation claim." Id. at 1114. The magistrate judge also held that "CERCLA § 113(f) provides plaintiff its exclusive remedy." Id. at 1116. The magistrate judge agreed "that the Supreme Court and every federal circuit court to consider the issue have held that a party which 'pays money to satisfy a settlement agreement or a court judgment' is limited to a § 113(f) contribution claim and 'cannot simultaneously seek to recover the same expenses under § 107(a).'" Id. at 1116-17 (citation omitted). The district court adopted the magistrate judge's recommendations and dismissed the complaint in its entirety.

9

**II. ANALYSIS**

ASARCO contends that the district court erred in granting the defendants' motions to dismiss ASARCO's complaint. A district court's dismissal under Rule 12(b)(6) is reviewed de novo. S.E.C. v. Shields, 744 F.3d 633, 640 (10th Cir. 2014); see also Hernandez v. Valley View Hosp. Ass'n, 684 F.3d 950, 957 (10th Cir. 2012) ("We review de novo the dismissal of an action under Rule 12(b)(6) based on the statute of limitations." (citation omitted)). "We accept as true all well-pleaded factual allegations in the complaint and view them in the light most favorable to the [plaintiff]." Shields, 744 F.3d at 640 (quoting Burnett v. Mortg. Elec. Registration Sys., Inc., 706 F.3d 1231, 1235 (10th Cir. 2013)).[5]

A. Did the district court err in ruling the contribution claim was untimely?

ASARCO's first argument on appeal is that its claim for contribution was not barred by the statute of limitations. CERCLA § 113(f) allows a PRP to bring a contribution claim against other PRPs under certain circumstances.[6] The statute

---

[5] We, like the district court, have relied on relevant documents from ASARCO's bankruptcy case. See Pace v. Swerdlow, 519 F.3d 1067, 1072-73 (10th Cir. 2008) ("[A] document central to the plaintiff's claim and referred to in the complaint may be considered in resolving a motion to dismiss." (citation omitted)); see also Hansen v. Harper Excavating, Inc., 641 F.3d 1216, 1219 n.2 (10th Cir. 2011) (taking judicial notice of documents in a separate district court case under Federal Rule of Evidence 201).

[6] "[CERCLA] § 113 provides two express avenues for contribution: § 113(f)(1) ('during or following' specified civil actions) and § 113(f)(3)(B) (after an administrative or judicially approved settlement that resolves liability to the United States or a State)." Cooper Indus., Inc. v. Aviall Servs., Inc., 543 U.S.

(continued...)

of limitations provides:

> No action for contribution for any response costs or damages may be commenced more than 3 years after–
> (A) the date of judgment in any action under this chapter for recovery of such costs or damages, or
> (B) the date of an administrative order under section 9622(g) of this title (relating to de minimis settlements) or 9622(h) of this title (relating to cost recovery settlements) **or entry of a judicially approved settlement with respect to such costs or damages.**

42 U.S.C. § 9613(g)(3) (emphasis added).

ASARCO argues that the bankruptcy court's order approving the Vasquez Site Settlement, entered on June 5, 2009, does not constitute "a final judicially approved settlement" because "[t]hat approval is preliminary and subject to a confirmation process culminating in a confirmation order (which . . . was required to be . . . entered by the Texas Court, rather than the Bankruptcy Court) finally fixing the amount of the claim to be paid and determining the party that will be liable" for paying the claim. Appellant's Br. at 13. According to ASARCO, at the time of the June 5, 2009, order, "the amount of the payable claim was not set, and the party responsible for its payment was unknown." Id.

ASARCO contends that because the term "judicially approved settlement" is not defined in CERCLA, it should be interpreted in light of "the purposes and limitations of a contribution claim." Id. at 15. ASARCO emphasizes that the

_____

[6](...continued)
157, 167 (2004).

11

purpose of a contribution claim is to allow a PRP who has overpaid to recover from other PRPs, and therefore, "until a party has actually paid (or knows that it is obligated to pay) more than its fair share, it cannot know whether it has a contribution claim against another potentially responsible party." Id. at 14. ASARCO argues that "for purposes of the accrual of a Section 113(f) contribution claim, a settlement has not been 'judicially approved' until the date of the final court action establishing who is obligated to pay the claim and how much is required to be paid." Id. at 15. According to ASARCO, it was not until the plan became effective on December 9, 2009, that "the Debtor's actual liability for the $1.5 million claim was fixed and payment could, and was, made." Id. at 17. Without an effective plan, ASARCO argues that it could have paid "any amount less than or equal to $1.5 million, including zero." Id.

By our reading of CERCLA § 113(g)(3), ASARCO's argument does not reflect the plain language of the statute. The statute of limitations begins on the "date of . . . entry of a judicially approved settlement with respect to such costs or damages." 42 U.S.C. § 9613(g)(3). The statute does not refer to the date payment is required under the settlement. It only looks to the date the judicially approved settlement is entered. Further, there is no indication that the date the settlement payment is actually made is relevant for accrual purposes. 42 U.S.C. § 9613(f)(3)(B) ("A person who has resolved its liability to the United States or a State for some or all of a response action or for some or all of the costs of such

12

action in an administrative or judicially approved settlement may seek contribution from any person who is not party to a settlement referred to in paragraph (2)."); cf. United States v. Colo. & E. R.R. Co., 50 F.3d 1530, 1538 (10th Cir. 1995) ("Contribution protection is conferred on the settling parties at the time the settling parties enter into the agreement. . . . Because only the EPA can rescind, . . . any information concerning whether the defendants remain in compliance with the agreement is irrelevant." (citation omitted)).

We conclude that the bankruptcy court's approval of the Vasquez Site Settlement on June 5, 2009, was a "judicially approved settlement" under CERCLA § 113(g)(3). The bankruptcy court conducted an extensive analysis regarding whether the compromises in the various settlements, including the Vasquez Site Settlement, were appropriate under bankruptcy law and CERCLA. The court used its authority under Federal Rule of Bankruptcy Procedure 9019, which states: "On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct." Fed. R. Bankr. P. 9019(a). A settlement approved under this rule must meet the ordinary definition of a "judicially approved settlement." 42 U.S.C. § 9613(g)(3)(B). There is nothing in the term "judicially approved settlement" or the text of CERCLA § 113 to indicate that there is any special or different rule which would apply in the

13

bankruptcy context. Here, a judicially approved settlement was entered on June 5, 2009, and therefore this action, brought more than three years after that date, is untimely.

The cases ASARCO cites do not counsel a different result. ASARCO contends that In re RNI Wind Down Corp., 369 B.R. 174, 184 (Bankr. D. Del. 2007), stands for the proposition that "contribution claims under CERCLA do not accrue until payment is made." Appellant's Br. at 14. But RNI's reference to CERCLA dealt with whether a contribution claim would be contingent under 11 U.S.C. § 502(e), not when contribution claims accrue. 369 B.R. at 184.[7] RNI provides no useful analysis for determining the statute of limitations for a cause of action against non-debtor PRPs.

ASARCO next points to United States v. Scott's Liquid Gold, Inc., 934 F. Supp. 362 (D. Colo. 1996), which it claims supports its position because "an agreement that 'merely sets forth the initial distribution of costs' but does not 'fix liability' does not trigger the running of the statute of limitations on a CERCLA

_____

[7] RNI's single reference to CERCLA was based on In re APCO Liquidating Trust, which considered whether a proof of claim filed against the debtor in bankruptcy was contingent or not. 370 B.R. 625, 636 (Bankr. D. Del. 2007). Contrary to ASARCO's argument, this proof of claim was based on a contribution lawsuit that had already been resolved. Id. at 629 ("After a lengthy trial, the Debtors were determined to be liable under [42 U.S.C. §] 9613(f)(1) for . . . 100% of the City's future source control costs to be incurred at 1001 E. Lincoln."). The only issue in In re APCO Liquidating Trust was whether that judgment was contingent under 11 U.S.C. § 502(e) because the City had "not yet incurred any future source control costs." Id. at 636.

14

contribution claim." Appellant's Br. at 14 (quoting 934 F. Supp. at 365). In

Scott's Liquid Gold, Inc., the United States, on behalf of the Department of the

Army, brought a contribution action against Scott's Liquid Gold. 934 F. Supp. at

363. Scott's Liquid Gold moved for summary judgment on the basis that the

contribution claim was untimely because of a 1987 Agreement between the Army

and the EPA. Id. at 364. The district court disagreed, apparently for two reasons.

First, the 1987 Agreement did not fix liability, which the district court found was

"a common factor linking the three events in [CERCLA] § 113(g)(3)(B)." Id. at

365. And second, the district court determined that even if the 1987 Agreement

had fixed liability, it had not been judicially approved, and thus it did not trigger

the statute of limitations. Id.

Scott's Liquid Gold, Inc. is unpersuasive here. First, unlike the agreement

between the Army and the EPA, the settlement here between ASARCO and the

EPA was judicially approved. Second, the district court viewed the 1987

agreement as one that "merely set[] forth the initial distribution of costs

associated with the [remedial measure] among the participating parties," but did

"not fix liability." Id.[8] The settlement here differs greatly because not only did it

_____

[8] The district court opinion describes the 1987 Agreement as "a cooperative agreement" between the Army, the EPA, and South Adams County Water and Sanitation District ("SACWSD"), "for the design and construction" of the Klein water treatment facility. Scott's Liquid Gold, Inc., 934 F. Supp. at 363. "Construction on the Klein WTF commenced on August 15, 1988." Id. Under

(continued...)

15

specify an amount that ASARCO was liable for, $1.5 million, but also it functioned as "full satisfaction of all claims and causes of action" by the EPA against ASARCO for the response costs related to the Vasquez Site. Although bankruptcy plans may propose paying allowed claims in part or in full, this does not change the fact that at the time of the settlement, ASARCO was liable for the determined sum of $1.5 million.

ASARCO also argues that "until a party has actually paid (or knows that it is obligated to pay) more than its fair share, it cannot know whether it has a contribution claim against another [PRP]," and cites to Durham Manufacturing. Co. v. Merriam Manufacturing. Co., 294 F. Supp. 2d 251 (D. Conn. 2003). Appellant's Br. at 14. But the issue in Durham was that "[n]one of the triggering events in CERCLA § 113(g)(3)" had occurred, and thus the district court was faced with deciding what limitations period to apply to fill the statutory gap. 294 F. Supp. 2d at 275. The present case differs greatly from Durham. We are not determining what statute of limitations applies to a factual scenario not described in CERCLA § 113(g)(3); instead, we are deciding what § 113(g)(3) means.

ASARCO also cites Ziino v. Baker, 613 F.3d 1326 (11th Cir. 2010), in

8(...continued)
this agreement, "the Army paid SACWSD $289,038 . . . for the construction of the facility, and six million dollars for the operation and maintenance of the facility. The Army paid an additional $975,000 to the EPA to connect users to the Klein WTF." Id.

16

support of its position that the effective date of the bankruptcy plan started the statute of limitations. ASARCO argues that the June 5, 2009, order was just "allowing a proof of claim," which is the first step, and not "a final order or judgment liquidating damages and requiring payment." Appellant's Br. at 17. The plaintiff, Robert Ziino, filed suit to enforce his allowed bankruptcy claim. Ziino, 613 F.3d at 1328. The Eleventh Circuit held that an allowed bankruptcy claim did not constitute a "money judgment" under Federal Rule of Civil Procedure 69. Id. at 1328-29. ASARCO relies heavily on the Eleventh Circuit's language concerning the distinction between allowed claims and money judgments. Id. at 1328 (citation omitted) ("An allowed claim in bankruptcy serves a different objective from that of a money judgment–it permits the claimant to participate in the distribution of the bankruptcy estate. [T]he assertion of a claim in bankruptcy is, of course, not an attempt to recover a judgment against the debtor but to obtain a distributive share in the immediate assets of the proceeding."). However, the question presented here is not whether the June 5, 2009, order would satisfy Rule 69, but whether it is a judicially approved settlement under CERCLA § 113(g)(3). The statute draws no distinction between settlements based on their similarity to allowed claims or money judgments, nor does it indicate that settlements are not truly "entered" until payment is required. Rather, as § 113(g)(3) is applied here, the statute of

17

limitations began to run on June 5, 2009.  This action is therefore untimely.[9]

### B. Did the district court err in ruling ASARCO was not a subrogee?

ASARCO's second issue on appeal is that the district court incorrectly held that ASARCO, the post-bankruptcy entity, was not the subrogee of debtor-ASARCO.  Black's Law Dictionary defines subrogation as the "substitution of one party for another whose debt the party pays, entitling the paying party to rights, remedies, or securities that would otherwise belong to the debtor."  Black's Law Dictionary (9th ed. 2009), subrogation.  It is an "equitable assignment" that "comes into existence when the surety becomes obligated . . . but such right of subrogation does not become a cause of action until the debt is fully paid."  Id.  The appellees point out that "'[a] person's payment of his own debt rather than of another's obligation does not entitle the person to subrogation.'"  Appellees' Br. at 38 (quoting In re Wingspread Corp., 145 B.R. 784, 789 (S.D.N.Y. 1992)).[10]  ASARCO argues that the district court was

---

[9] As Union Pacific and Pepsi note, three district courts have also concluded that the date the judicially approved settlement agreement was entered is the proper date, not the date the bankruptcy plan was approved or became effective. ASARCO LLC v. Goodwin, No. 12-cv-3749 (S.D.N.Y. Sept. 18, 2013), appeal pending, No. 13-3954 (2d Cir.); ASARCO LLC v. Xstrata PLC, No. 2:12-CV-527-TC, 2013 WL 2949046, at *3-4 (D. Utah June 14, 2013); ASARCO LLC v. Atlantic Richfield Co., No. CV 12-53-H-DLC, 2012 WL 5995662, at *2 (D. Mont. Nov. 30, 2012).

[10] Neither party has addressed whether federal or state law provides the elements for subrogation in this case.  See United States v. Kimbell Foods, Inc., 440 U.S. 715, 727-29 (1979) (discussing issues relevant to deciding "[w]hether to

(continued...)

18

incorrect in holding that reorganized ASARCO and debtor ASARCO were the same entity.

ASARCO first relies on the "general proposition of bankruptcy law" that "once a plan is confirmed and becomes effective, the 'debtor' ceases to exist and 'the reorganized debtor is a new entity not subject to the jurisdiction of the bankruptcy court, except as provided in the plan.'"  Appellant's Br. at 25 (quoting In re Briscoe Enters., Ltd., II, 138 B.R. 795, 809 (N.D. Tex. 1992), rev'd on other grounds, 994 F.2d 1160 (5th Cir. 1993).  ASARCO supports this contention with several cases that have stated, in various precise phrases, that the reorganized debtor is legally distinct from the debtor-in-possession.

However, these cases dealt with bankruptcy jurisdiction, not subrogation. For example, in Briscoe, the district court evaluated whether to affirm the bankruptcy court's confirmation of the bankruptcy plan.  138 B.R. at 801.  The appellant opposed the bankruptcy plan in part because it gave fee-approval authority to trustees not under the bankruptcy court's supervision.  Id. at 809. The district court did not find this to be problematic, however, because "upon

[10](...continued)
adopt state law or to fashion a nationwide federal rule" when resolving disputes regarding federal programs); United States v. Hardage, 985 F.2d 1427, 1433 n.2 (10th Cir. 1993) (applying Kimbell to conclude state law applies to determine the meaning of indemnification provisions, as applied in a CERCLA case).  We decline to raise this unbriefed issue sua sponte.  See Flying J Inc. v. Comdata Network, Inc., 405 F.3d 821, 831 n.4 (10th Cir. 2005).

plan confirmation, a debtor is no longer a debtor in possession and the bankruptcy estate ceases to exist." Id. It was in this context that the district court stated that "the reorganized debtor is a new entity and not subject to the jurisdiction of the bankruptcy court, except as provided in the plan." Id. The district court held that "approval of fees for post-confirmation services is not required." Id. The district court clearly used the term "entity" to note the change in status that occurs upon plan confirmation. This discussion in Briscoe does not speak to whether a reorganized debtor that pays debts under a bankruptcy plan is paying its own debts or the debts of another.

ASARCO attempts to salvage its subrogation argument by contending that "a court should look to the substantive effect of the plan—ignoring formalism—when determining whether a debtor and reorganized entity are separate." Appellant's Br. at 27 (citing Cross Media, 367 B.R. at 451). However, ASARCO has not shown that the bankruptcy plan created a new corporate entity. ASARCO's only argument is that the plan states that reorganized ASARCO is not "responsible for any successor or transferee liability of any kind or character." App'x at 378. ASARCO argues that if reorganized and debtor ASARCO were truly the same entity, this provision would be unnecessary. But this provision by itself cannot create a new corporation. ASARCO argues that "the Debtor ceased to exist on the Effective Date, ASARCO was created on the Effective Date, and the former Debtor and ASARCO are distinct legal entities." Appellant's Br. at

20

29.  Nothing in the bankruptcy plan supports the contention that there was a dissolution of one ASARCO and the formation of a new corporation named ASARCO.  In fact, the bankruptcy plan points to just the opposite conclusion.  As recounted by the magistrate judge, the plan has ASARCO continuing in its same corporate form after plan confirmation.

C. Did the district court err in ruling that CERCLA § 113(f) provided ASARCO's exclusive remedy?

ASARCO's final argument is that it was error to dismiss its subrogated contribution claim on the basis that CERCLA § 113(f) is its exclusive remedy.  ASARCO agrees that it cannot bring both a CERCLA § 113(f) contribution claim and a CERCLA § 107(a) cost-recovery claim, but contends it has not brought a § 107(a) claim.  ASARCO states that both of its counts are for contribution; it is just that count II does so based on a theory of subrogation.  ASARCO is correct that it is not bringing a CERCLA § 107(a) cost-recovery action, and thus the authority cited by the magistrate court is inapplicable.  This issue is moot, however, because ASARCO is not a subrogee.

Because ASARCO's direct contribution claim is time-barred and ASARCO is not a subrogee, we AFFIRM the district court's order.

21